STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. MORIARTY, III, Defendant-Appellant.

Court of Appeals

*No. 81–1179–CR. Submitted on briefs February 3, 1982.—Decided May 12, 1982.*
(Also reported in 321 N.W.2d 324.)

For the defendant-appellant the cause was submitted on the brief of *Steven D. Phillips,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J. Michael Moriarty appeals from a judgment of conviction for armed robbery and false imprisonment. He argues that the trial court committed error when it admitted into evidence certain medical conclusions offered by the State on rebuttal even though the State had not produced the medical records pursuant to Moriarty's discovery demands. We hold that the conclusions were properly admitted because the State did not intend to use the records at trial and offered this evidence only in rebuttal. Moriarty also argues that the trial court committed plain error when it gave the former standard jury instruction on armed robbery even though this offense was governed by the new version of

the armed robbery statute. We hold that it was plain error to give this jury instruction because it misstated the law as to an element of the crime alleged. Accordingly, that portion of the judgment convicting Moriarty of armed robbery is reversed.

On the weekend of August 9, 1980, Nick Haviland and Mike Driscoll were staying in Kenosha county at a lake cottage owned by Haviland's parents. On Friday night, they met Michael Moriarty and Gregory Schmude. The next day, Moriarty and Schmude went to the Haviland cottage and worked on Schmude's car. Schmude decided that he needed to buy a fan belt in Kenosha. Driscoll drove Moriarty, Schmude and Haviland to Kenosha in Haviland's car. Schmude and Moriarty forced Driscoll and Haviland to stop at several bars. Driscoll and Haviland protested, but Moriarty and Schmude harassed and threatened them. Eventually, Haviland handed over his car keys to Moriarty and Schmude, and they took over the driving.

Haviland had $55 in cash in his pocket. At one bar, Schmude asked Haviland if he could borrow $5. When Haviland took his money out of his pocket, Schmude grabbed $25. Then Moriarty asked Haviland what else he had. When Haviland pulled out the rest of his money, Moriarty took some, and Schmude took the rest.

Later, while the group was at another bar, Driscoll ran out of the bar to call the police. Moriarty and Schmude left with Haviland, and the three drove around the countryside for the next two hours. Haviland was punched and beaten. At one point during this drive, Moriarty grabbed Haviland by the head and waved a knife in his face. Throughout this period, Schmude and Moriarty were trying to get a credit card they thought Haviland had, and, at some time while they were driving around the countryside, Schmude and Moriarty demanded that Haviland give them his wallet. When he did, however, they discovered it was empty, threw it out the window and took some change Haviland had in his pocket.

When Moriarty and Schmude drove Haviland back to his parents' cottage, Haviland jumped out and ran to his neighbor's house to call the police. Moriarty and Schmude were arrested and charged. Their cases were consolidated, and they were bound over for trial on charges of false imprisonment, in violation of sec. 940.30, Stats., and armed robbery, party to a crime, in violation of secs. 943.32(1)(b) and (2) and 939.05(1), Stats.

At the close of the evidence, the court instructed the jury regarding the elements of armed robbery. The court stated that the prosecution was required to prove beyond a reasonable doubt "that at the time of the taking the defendants were armed with a dangerous weapon. 'Armed' means furnished or equipped with a weapon of offense or defense . . . ." The jury found both Moriarty and Schmude guilty of false imprisonment and of armed robbery, parties to a crime. Moriarty was sentenced to five years' imprisonment for armed robbery and two years, to be served concurrently, for false imprisonment. He appeals from the judgment of conviction.

## A. *Haviland's Medical Records*

Moriarty argues that the trial court committed error when it ruled that the medical records were admissible as rebuttal evidence. The court ruled that the records were admissible because they were not subject to Moriarty's discovery request. Subsequent to the court's ruling, the parties stipulated to a statement of the conclusions contained in the records. The stipulated conclusions, not the records themselves, were admitted into evidence. Moriarty claims that the prosecution was barred from using those conclusions at trial because it failed to produce the medical records containing those conclusions, pursuant to Moriarty's discovery demand.

Prior to trial, the prosecution did not obtain or produce Haviland's medical records and did not list the

physician who treated Nick Haviland, Dr. Urban of Hinsdale, Illinois, as one of the State's witnesses. On the first day of trial, the State provided the defense with a copy of Dr. Urban's medical reports on Haviland's injuries. However, Haviland's injuries were not discussed in the presentation of the prosecution's case-in-chief or on cross-examination of Haviland by the defense. The extent of Haviland's injuries was not placed in issue until Schmude testified during the defendant's case and implied that Haviland's injuries resulted from a sudden stop made while he and Moriarty were driving Haviland around the countryside.

On rebuttal, the prosecution offered the medical records into evidence. The defense objected on grounds that the State was barred from introducing the records because it failed to produce them pursuant to the defense discovery demand. The court ruled that the records were admissible because they were offered in rebuttal to an issue first raised by the defense. The parties then stipulated to a statement of the conclusions contained in the records. The defendants waived any hearsay objection to the conclusions, but the court allowed them to preserve their original objection to admitting the content of the records into evidence. The following statement was then admitted into evidence:

That Nicholas Haviland was admitted to the Hinsdale Hospital in Hinsdale, Illinois on August 11, 1980; that he was treated by Dr. Urban, M.D.; that Dr. Urban's final diagnosis was a concussion, multiple bruises, contusions of the head and posterior neck area. This concussion was a superficial bruise to the brain. In Nick Haviland's treatment, further examination of the brain yielded no permanent injury to his brain.

Moriarty contends that the discovery demand is governed by subsection (5) of sec. 971.23, Stats., which applies to scientific analyses as follows:

On motion of a party subject to s. 971.31(5), the court may order the production of any item of physical evidence which is intended to be introduced at the trial for scientific analysis under such terms and conditions as the court prescribes. The court may also order the production of reports or results of any scientific tests or experiments made by any party relating to evidence *intended to be introduced at the trial.* [Emphasis added.]

According to Moriarty, subsection (5) should not be construed to limit "scientific" so as to exclude "medical" reports. Moriarty had demanded the State to furnish "any and all reports or statements of experts, made in connection with this case including results of physical, medical or mental examinations . . . ." He argues that, in general, scientific reports and test results contained in medical records should be open to discovery in order for counsel to conduct adequate cross-examination where physical injuries are an issue at trial.

The district attorney in the present case stated that he did not intend to use the medical records in the presentation of his case-in-chief. The transcript shows that Haviland's injuries were not at issue during the prosecution's presentation of its case or during cross-examination of Haviland by the defense. The injuries only became an issue during the defense portion of the trial, when defendant Schmude testified and implied that Haviland's injuries were caused by a sudden stop of the vehicle. The trial court found that the evidence was being offered to rebut Schmude's testimony about the cause of Haviland's injuries.

We conclude that the medical records in this case were not subject to the provisions of sec. 971.23(5), Stats., because they were not "reports or results of any scientific tests or experiments made by any party relating to evidence intended to be introduced at the trial." First of all,

the prosecution did not intend to use medical evidence of Haviland's injuries at trial. As the trial court found, the question of the source of Haviland's injuries was raised for the first time by the defense, and the records were offered only to impeach Schmude's testimony in that regard.

Secondly, there is no indication that the medical records in this case contained "results or reports of scientific tests or experiments," according to the terms of the statute.

The contents of the stipulation show that the evidence sought to be admitted through the medical records was the equivalent of a statement of Haviland's treating physician as to the nature and extent of Haviland's injuries based upon the physician's personal observations. The contents of the medical records simply constituted a statement by Haviland's treating physician. Under subsection (3) (a) of sec. 971.23, Stats.:

A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial. *This section shall not apply to rebuttal witnesses or those called for impeachment only.* [Emphasis added.]

The testimony of the physician himself on rebuttal would not have been barred by provisions of subsection (3) of sec. 971.23, Stats., under the circumstances of this case. The parties expressly waived any hearsay objection when they entered into the stipulation. Accordingly, the statement of the physician, as contained in the medical records,

was admissible as rebuttal testimony under sec. 971.23 (3), Stats.

We conclude that, based upon the facts in this case, Haviland's medical records are not reports required to be disclosed under sec. 971.23(5), Stats. Therefore, we hold that the trial court did not commit error in allowing admission of those statements as rebuttal evidence.

## B. *Jury Instruction on Armed Robbery*

Moriarty next argues that the trial court committed reversible error when it instructed the jury that the State was required to prove beyond a reasonable doubt that the defendants "were armed with a dangerous weapon" at the time of the taking.

Robbery is prohibited under sec. 943.32(1), Stats., as follows:

Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

Armed robbery is prohibited by subsection (2) of that statute. The former version of subsection (2) provided that "[w]hoever violates sub. (1) *while armed* with a dangerous weapon is guilty of a Class B felony." (Emphasis added.)

The statute was amended effective March 1, 1980 to read: "Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to

believe that it is a dangerous weapon is guilty of a Class B felony." Under this amendment, it is no longer sufficient for the State to prove that a defendant was merely armed; the State must now prove the *use or threat of use* of the weapon during the commission of the robbery.

The amended version of sec. 943.32(2), Stats., was in effect on August 10, 1980, the day of the offense in the present case. Thus, when the trial court used the former standard jury instruction, the court misstated the law applicable to the offense.

Despite this error, the State contends that the court's erroneous instruction does not warrant reversal because the defense attorney failed to object to that instruction at trial.

An appellate court may, in its discretion, consider whether a jury instruction mandates reversal, even where objection is clearly waived. *State v. Paulson,* 106 Wis. 2d 96, 104, 315 N.W.2d 350, 354 (1982). The test on review where a defendant contends that a jury instruction should be reviewed on appeal despite a waiver of objection is whether the error is so plain or fundamental as to affect the defendant's substantial rights. *Id.* at 104–05, 315 N.W.2d at 355; sec. 901.03(4), Stats. It is the established rule that objection to instructions is not waived where the instruction misstates the law. *Lambert v. State,* 73 Wis. 2d 590, 607, 243 N.W.2d 524, 532 (1976). Under the due process clause of the United States Constitution, an accused is protected against conviction except upon proof beyond a reasonable doubt. *Muller v. State,* 94 Wis. 2d 450, 473–74, 289 N.W.2d 570, 582 (1980).

In the present case, the State was required to prove that Moriarty used or threatened the use of a dangerous weapon during commission of the robbery and not merely

that Moriarty was armed at the time of the taking. Under the instruction given by the trial court, the jury could have found Moriarty guilty of armed robbery merely on the basis that he was armed with a knife and without making the requisite finding that Moriarty used or threatened to use the knife. The jury instruction given here affected Moriarty's substantial rights because it allowed the jury to convict him without making a finding as to an element of the offense.

Moreover, the error in instruction was not harmless because the instruction allowed the State to be relieved of its burden to prove every fact essential to the crime charged. In order for an error of constitutional dimension to be found harmless, this court must be able to "declare a belief that it was harmless beyond a reasonable doubt." *State v. Nye*, 100 Wis. 2d 398, 403, 302 N.W.2d 83, 86 (Ct. App. 1981), *summarily aff'd*, 105 Wis. 2d 63, 312 N.W.2d 826 (1981) ; *see also Chapman v. California*, 386 U.S. 18, 24 (1967).

Haviland's testimony regarding the knife and the taking of his wallet was contradictory. At first, Haviland testified that he was not sure whether the incident with the knife occurred before or after the wallet was taken. Upon further questioning by the prosecutor, Haviland stated that he handed over his wallet "very soon" after Moriarty waved the knife. There was also testimony showing that Haviland had been aware since the night before the incident that Schmude carried a knife. On the basis of the testimony, the jury could have found the defendants guilty of armed robbery merely on the basis that they were armed with the knife without considering whether they used or threatened to use the knife during the robbery. We conclude that the jury instructions given by the court did not constitute harmless error and that portion of the judgment convicting Moriarty of armed robbery is reversed.

*By the Court.*—Judgment affirmed in part; reversed in part.