STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Frank P. HOWARD, Defendant-Appellant.

Supreme Court

*No. 95–0770. Oral argument January 8, 1997.—Decided June 26, 1997.*

(Also reported in 564 N.W.2d 753.)

For the plaintiff-respondent-petitioner the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Daniel R. Clausz* and *Williams Law Offices*, Delavan and oral argument by *Daniel R. Clausz*.

Amicus curiae brief was filed by *Robert R. Henak* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee for the Wisconsin Association of Criminal Defense Lawyers.

¶ 1. JANINE P. GESKE, J. The State seeks review of a published decision of the court of appeals[1] reversing an order of the Waukesha County Circuit Court, Lee S. Dreyfus, Jr., Judge. The circuit court refused to grant the defendant, Frank P. Howard, a new trial on the issue of whether he was guilty of delivery of a controlled substance while possessing a dangerous weapon.

¶ 2. Howard contends that because the jury was not required to find beyond a reasonable doubt that he possessed a dangerous weapon to facilitate the commission of the drug offense, due process and our decision in *State v. Peete*[2] require that he receive a new trial on the issue of the dangerous weapon enhancer. We conclude that the holding of *Peete* applies to cases of actual as well as constructive possession, and must be applied retroactively to this case. We further hold that because Howard could not have foreseen the effect of the *Peete* decision at the time of his original appeal, his motion for a new trial is not barred by our decision in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W. 2d 157 (1994). We therefore affirm the court of appeals.

## FACTS AND PROCEDURAL HISTORY

¶ 3. In 1989, the State charged Howard with, *inter alia*, aiding and abetting the unlawful delivery of a controlled substance (cocaine) while possessing a dangerous weapon, in violation of Wis. Stat. §§ 161.41(1)(c)2, 939.05, 939.63(1)(a)3 and 2 (1987–88). At trial, the police testified that when they searched Howard at the scene, they found a handgun in his coat

---

[1] *State of Wisconsin v. Frank Howard*, 199 Wis. 2d 454, 544 N.W.2d 626 (Ct. App. 1996).

[2] 185 Wis. 2d 4, 517 N.W.2d 149 (1994).

pocket. At that point, Howard told them that he had another gun in his jacket. Howard, however, testified that he told the police he had two guns on his person before the police initiated their search of him. When Howard was arrested, he had approximately $2,200 in cash on his person, as well as the two handguns. According to his testimony, Howard had the money at his garage, because he saved it to buy, fix up and sell cars. He had the guns at the garage for protection. According to Howard, his garage was in a high crime area of Milwaukee.

¶ 4. In February of 1990, Howard was tried by jury. At the conclusion of the evidence, the circuit court instructed the jury on the elements of the first charged offense. The court also instructed the jury on the penalty enhancer of possessing a dangerous weapon.[3] Wis JI—Criminal 990. "Possession" was not defined in that jury instruction. The court also instructed the jury on the charge of possession of a firearm by a felon, using Wis JI—Criminal 1343. That instruction defined "possession" as "the defendant knowingly had a firearm under his actual physical control." Howard did not object to these jury instructions.

---

[3] The court gave the following instruction:

If you find the Defendant guilty of party to the crime of delivery of cocaine, you must answer the following question: Did the Defendant commit the crime of party to the crime of delivery of cocaine while posssssing [sic] a dangerous weapon?

A "dangerous weapon" is any firearm, whether loaded or not.

If you are satisfied beyond a reasonable doubt from the evidence presented that the Defendant committed the crime of party to the crime of delivery of cocaine while possessing a dangerous weapon. . .then you should answer the question "yes".

If you are not so satisfied, then you must answer the question "no".

273

¶ 5. In closing argument, the prosecutor described to the jury the elements necessary to prove the charges against Howard. With regard to the penalty enhancer, the prosecutor stated,

"[A]nd further as to the January 20th incident, out at the Marriott, an additional factor you must consider in that count alone is did he commit that crime; that is, the delivery of cocaine over 10 and under 30 grams while possessing a firearm. In this case, it's clear the Defendant admitted that he had the two firearms with him on that date, so if you find the Defendant guilty of that offense and I ask you to do so, finding that he possessed those firearms is also a given fact."

Wrapping up his argument, the prosecutor stated:

"I ask you to reach a quick verdict as well as a guilty verdict finding that,. . .on January 20th, 1989, he knowingly and unlawfully helped, assisted, and, in fact, was a supplier for delivery of cocaine from Jay Clemins to Officer Adlam unwittingly and that he had a couple guns with him at the time, and also on that day, that he was a convicted felon and had those guns with him also."

¶ 6. The jury found Howard guilty of party to a crime of delivery of controlled substance (cocaine) while in the possession of a firearm, possession of a firearm by a felon, and delivery of controlled substance (cocaine). Howard was sentenced on all three counts. On March 23, 1990, the circuit court sentenced him to nine years in prison, the maximum for the crime of delivery of a controlled substance, party to a crime while possessing a dangerous weapon. At that time, the maximum penalty for the underlying crime was 5

years. The maximum penalty for the enhancer charge was 4 years.

¶ 7.   Howard filed a number of post-conviction motions and a direct appeal. After exhausting his direct appeals, Howard filed a pro se[4] motion on October 3, 1994, requesting postconviction relief and/or modification of sentence pursuant to Wis. Stat. § 974.06,[5] and based on this court's holding in *Peete*. In

---

[4] Howard originally filed this motion pro se. On December 13, 1994, a Notice of Amended Motion and Amended Motion for a New Trial or Sentence Modification pursuant to Wis. Stat. § 974.06 was filed by Howard's current attorney, Daniel R. Clausz.

[5] **Wis. Stat. § 974.06 (1991–92) Postconviction procedure.**

(1) After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program under s. 973.11 claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .

(3)  . . .

(d)   Determine the issues and make findings of fact and conclusions of law. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the person as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the person or resentence him or her or grant a new trial or correct the sentence as may appear appropriate.

(4)   All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that

275

*Peete*, we held that when a defendant is charged with the penalty enhancer of committing a crime while in possession of a dangerous weapon, Wis. Stat. § 939.63 requires the State to prove a nexus between the underlying crime and possession of the weapon. *Peete*, 185 Wis. 2d at 18–19. Howard thus sought a new trial, because in his first trial the jury received no instruction on the nexus element. The circuit court denied Howard's motion. The court of appeals reversed.[6] The State sought review by this court.

## STANDARD OF REVIEW

¶ 8. Whether our construction of Wis. Stat. § 939.63 (1987–88) in *Peete* applies to cases of actual, as well as constructive, possession and if so, whether *Peete* must be applied retroactively to this case are questions of law that we review independently, benefiting from the analyses of the lower courts. *See State v. Avila*, 192 Wis. 2d 870, 885, 891, 532 N.W.2d 423

resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

[6] In reversing the circuit court, the court of appeals remanded for entry of the judgment of conviction solely on the delivery of cocaine charge and resentencing on that underlying conviction. The court of appeals also remanded for vacation of Howard's sentence for delivery of cocaine while armed, and ordered that Howard was entitled to a new trial on the issue of whether he committed the underlying drug offense while in possession of a weapon. In the event of a new trial, the court of appeals ordered the circuit court to vacate the sentence and resentence Howard after the new trial. *State v. Howard*, 199 Wis. 2d at 463–64.

(1995). If *Peete* is applicable to this case, we then consider, as a question of law, whether Howard's claim is barred under *Escalona-Naranjo*. Whether the jury instructions given by the circuit court violated the defendant's right to due process is a question of law that we review independently of the lower courts. *State v. Zelenka*, 130 Wis. 2d 34, 43, 387 N.W.2d 55 (1986).

## THE *PEETE* DECISION

¶ 9.   A review of our decision in *Peete* illustrates the basis for Howard's claim. Jerry Peete was arrested at his girlfriend's residence, following a search of the premises. *Peete*, 185 Wis. 2d at 10. That search revealed plastic bags containing cocaine stuffed in socks in a dresser drawer in the girlfriend's bedroom. Also in the bedroom were over $2,000 in cash and a number of personal items belonging to Peete. Between the mattresses was a loaded handgun. *Id.* at 11. In the kitchen, police found three loaded handguns in a cereal box. *Id.* Peete was arrested and convicted of possession of cocaine with intent to deliver while armed. *Id.* at 9.

¶ 10.   At Peete's trial, the court did not give a separate instruction on what constituted "possession" of a dangerous weapon for purposes of Wis. Stat. § 939.63, the penalty enhancer. *Peete*, 185 Wis. 2d at 12–13. On appeal, and on review by this court, Peete raised the question of what the jury was required to find under the instruction as given. *Id.* at 14.

¶ 11.   On review, we engaged in statutory interpretation and construction. We held that § 939.63[7] created a possessory offense linked to a predicate

---

[7] Wis. Stat. § 939.63 (1987–88) provides in pertinent part:

(1)(a)   If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as

offense. *Peete*, 185 Wis. 2d at 14. Section 939.63 provides that if a defendant commits a crime while in possession of a dangerous weapon, his or her sentence may be increased by varying amounts of time, depending on the maximum sentence for the underlying offense. *Id.* Both Peete and the State agreed that the legislature intended the enhancer to apply only when there is a relationship between the underlying crime and the weapon. *Id.* at 16–17. We unanimously held that Wis. Stat. § 939.63 requires the State to prove a nexus between the crime and the weapon the defendant possessed, because that nexus is an element of the penalty enhancer. *Id.* at 18–19. We later clarified that the weapons penalty enhancer is an element of the enhanced offense, but is not an element of the underlying offense. *Avila*, 192 Wis. 2d at 893b. The jury must find the nexus element beyond a reasonable doubt. *Peete*, 185 Wis. 2d at 21.

¶ 12.   In *Peete*, we also interpreted the penalty enhancer provision to apply to actual, as well as constructive possession of a weapon. *Peete*, 185 Wis. 2d at 16; *see also, Avila*, 192 Wis. 2d at 891. Our interpretation was consistent with the interpretation of other criminal statutes governing possessory offenses. *Peete*, 185 Wis. 2d at 14 (citations omitted).

¶ 13.   We then considered the proper definition of an adequate nexus. We ultimately adopted the definition proposed by the State and agreed to by Peete: "[W]hen a defendant is charged with committing a crime while possessing a dangerous weapon, under sec. 939.63, the state should be required to prove that *the defendant possessed the weapon to facilitate commission of the predicate offense*." *Peete*, 185 Wis. 2d at 18

follows: [statute then sets increased penalties that vary according to the penalty for the predicate offense].

278

(emphasis added). We recognized that the use of, or a threat to use, a weapon facilitated commission of the predicate offense because such use or threat instills fear in the victim, protects the defendant, and/or protects the contraband. *Id.* Under our construction of the statute, imposing the nexus requirement made the phrase "while possessing" parallel to the other statutory phrases, "while. . .using" and "while. . .threatening to use." *Id.*

¶ 14.   We then established the proper instructions to be given the jury when a defendant is charged with the weapons penalty enhancer: "A circuit court must instruct the jury on the definition of possession; on the nexus requirement, that the defendant possessed the weapon to facilitate the predicate crime; and on the definition of dangerous weapon." *Peete*, 185 Wis. 2d at 21.

¶ 15.   At the time Peete was arrested, he did not use, or threaten to use, a dangerous weapon. The lower court concluded that Peete constructively possessed (at least one) dangerous weapon. We reversed Peete's conviction because, in light of that possession, the circuit court failed to instruct the jury on the nexus requirement. Without a nexus instruction, the jury was not asked to decide whether the State had proven beyond a reasonable doubt each element of § 939.63. *Peete*, 185 Wis. 2d at 19.

¶ 16.   In *Peete*, as in Howard's case, the State argued that the evidence supported a conclusion that the nexus requirement was satisfied. *Peete*, 185 Wis. 2d at 19. What we said in *Peete* applies equally here: "a court may not direct a verdict of guilt against a defendant in a criminal case. Where the finder of fact is a jury, proof of all essential elements must be tendered to the jury." (Citations omitted.) The jury must make the

factual finding of whether Howard possessed a handgun to facilitate the commission of the predicate crime. *Id.*

## ACTUAL VERSUS CONSTRUCTIVE POSSESSION

¶ 17. The State first argues that Howard is not entitled to relief because the case against him proceeded under the theory of actual possession, and the State proved actual possession. The State thus contends that the *Peete* instruction would not have enhanced the fact finding in Howard's case.

¶ 18. The State has borrowed from Jerry Peete's brief to assert that physical control of a weapon at the time of the offense would permit a reasonable inference of a direct connection between the weapon and the substantive offense. Peete's brief contended that the inference applied at the time of the offense, even applying to offenses committed in private, like tax fraud. The State's position in *Peete* was that it would be absurd to apply the penalty enhancer to situations where there is no relationship between the offense and the possession, such as when a person fills out and files a fraudulent tax return while carrying a pistol. *See* 185 Wis. 2d at 17.

¶ 19. We agree with the State's position in *Peete*. There can be situations when a defendant is in actual possession of a dangerous weapon during commission of a crime, but where the actual possession has no relationship to the predicate crime. Where the possession has no relationship to the predicate crime, it does not facilitate the commission of the predicate crime. *Peete* directs the jury to determine whether such a relationship exists.

¶ 20. Thus we do not accept the State's contention that "by proving actual possession, the State has proved the nexus and despite the absence of an instruction, has satisfied the rule of *Peete*." *Peete* is not limited to constructive possession of a dangerous weapon while committing a crime.

¶ 21. The State may have based its actual versus constructive possession distinction on our statement in *Peete* that the addition of the nexus requirement makes "possessing" parallel to the "use of" or "threatened use of" language from Wis. Stat. § 939.63. Jerry Peete had only constructive possession in that case. Our statement there, however, does not eliminate the nexus requirement in cases of actual possession.

¶ 22. Based on the jury instructions given in Howard's case, we cannot know whether the State proved existence of a nexus beyond a reasonable doubt, merely by proving actual possession. The only possession instruction given concerned the third count, possession of a firearm by a felon. That offense contains no nexus element. Thus, the jury was never instructed, nor specifically asked to find beyond a reasonable doubt, that Howard possessed a dangerous weapon for the purpose of facilitating commission of the drug offense. Such an instruction, and such a finding beyond a reasonable doubt, are required for the State to meet its burden on the enhancer provision. As such, if the rule announced in *Peete* applies to Howard, the circuit court erred by failing to instruct on the nexus element. *In Re Winship*, 397 U.S. 358, 364 (1970).

## RETROACTIVE APPLICATION

¶ 23. Next we determine whether the rule we announced in *Peete* applies retroactively to cases on

collateral review. The judgment in Howard's case was final[8] before we decided *Peete* in June, 1994.

¶ 24.  The United States Supreme Court set the parameters for the federal doctrine of non-retroactivity in *Teague v. Lane*, 489 U.S. 288 (1989).[9] First, the court said that retroactivity only applies to certain new rules. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government." *Id.* at 301. New rules merit retroactive application on collateral review only in two instances. In the first instance, a "new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *State v. Denny*, 163 Wis. 2d 352, 357, 471 N.W.2d 606 (Ct. App. 1991) (citing *Teague*, 489 U.S. at 307). "Second, a new rule should be applied retroactively if it requires observance of those procedures that are implicit in the concept of ordered liberty." *Denny*, 163 Wis. 2d at 357 (citing *Teague*, 489 U.S. at 307). The court of appeals concluded that the first exception applied to Howard. *Howard*, 199 Wis. 2d at 460. The court of appeals held that the nexus requirement of *Peete* places the conduct beyond the power of the criminal law-making authority to proscribe. *Id.*

---

[8] A case is final if the prosecution is no longer pending, a judgment of conviction has been entered, the right to a state court appeal from the final judgment has been exhausted, and the time for certiorari review in the United States Supreme Court has expired. *See Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987).

[9] Only a plurality of the Court adopted the doctrine of retroactivity set out in *Teague v. Lane*, 489 U.S. 288 (1989). Later, a majority of the Court endorsed the doctrine. *Graham v. Collins*, 506 U.S. 461, 471 (1993).

¶ 25.　It is not absolutely clear from the Supreme Court's discussion in *Teague* if the Court meant to apply the non-retroactivity doctrine to questions of substantive law, as well as to questions of procedure. *See Teague*, 489 U.S. at 299, 304. In that case, the petitioner sought retroactive application of a new rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986).[10] The confusion arises from *Teague*'s delineation of the exceptions to non-retroactivity. The first exception, that "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," 489 U.S. at 311 (internal quotations omitted), would seem to cover conduct that is classically substantive. The second *Teague* exception, that "a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty," *id.* (internal quotations omitted), clearly applies to rules of procedure. After discussing the costs of broad retroactivity, the *Teague* plurality adopted the exceptions as originally proposed by Justice Harlan. The Court stated that unless cases on collateral review fall within one of the exceptions, "new constitutional rules of criminal procedure" would not apply to cases which became final before the new rules were announced. 489 U.S. at 310.

---

[10] The Court held in *Batson v. Kentucky*, 476 U.S. 79, 96 (1986), that a defendant can establish a prima facie case of racial discrimination by showing that he or she is a member of a cognizable racial group, that the State exercised peremptory challenges to remove from the jury members of the defendant's race, and that those facts and any other relevant circumstances create an inference that the State used that practice to exclude jurors because of race.

¶ 26. Based on the *Teague* Court's own summary, we agree with the State that the *Teague* retroactivity analysis is limited to procedural rules. *See also State v. Koch*, 175 Wis. 2d 684, 694, 499 N.W.2d 152, *cert. denied*, 510 U.S. 880 (1993) (comparing criteria from earlier cases, and substituting the *Griffith / Teague* rule as the law in Wisconsin for determining whether to apply a new rule of criminal procedure retroactively); *Denny*, 163 Wis. 2d at 356–57 (holding that new rule requiring a trial court to consider defendant's own confession to assess whether a codefendant's statements are supported by sufficient indicia of reliability, fits second *Teague* exception as a procedure implicit in the concept of ordered liberty).

¶ 27. The State concedes that *Peete* may have effected a substantive change in the law and that the doctrine of non-retroactivity found in *Teague* does not apply to substantive interpretations. Neither would the doctrine as endorsed by this court in *Schmelzer v. Murphy*, 201 Wis. 2d 246, 257, 548 N.W.2d 45 (1996), bar us from applying the rule of *Peete* to Howard.

¶ 28. Schmelzer claimed ineffective assistance of counsel. We held that there is a statutory right to counsel in the preparation of a petition for review to this court, and that Schmelzer's appellate counsel had performed deficiently for failing to timely file a petition for review. *Schmelzer*, 201 Wis. 2d at 249. We also concluded, however, that Schmelzer was not prejudiced by his appellate counsel's deficient performance. Our holding, that one in Schmelzer's situation may petition for a writ of habeas corpus and should the writ be granted, the court can allow the late filing of such a petition for review, announced a new procedural rule. *Id.* at 256.

¶ 29. We then considered the question of retroactivity. *Schmelzer*, 201 Wis. 2d at 256–57. We endorsed the rule of *Teague*, recognizing its two exceptions to non-retroactivity. We concluded, however, that a strict application of *Teague* would prevent retroactive application of any new rule of law relating to habeas corpus claims based on a statutory right. *Schmelzer*, 201 Wis. 2d at 257–58. Because ineffective assistance of counsel claims can only be brought through a writ of habeas corpus, we articulated a third exception, to include claims that can only be raised on collateral review. *Id.* at 258.

¶ 30. *Schmelzer* then went on to specifically state that the new rule it adopted would apply to the defendant in that case, but would not apply retroactively to cases finalized before that opinion. *Id.* We announced no such limitation in *Peete*.

¶ 31. However, the State attempts to cleave the *Peete* decision into two parts: first, a substantive change in statutory interpretation; and second, a procedural change in the required jury instructions. The State contends that the *Peete* requirement for a jury instruction on nexus is only a procedural change and therefore does not require a retroactive application. We disagree.

¶ 32. Our interpretation of Wis. Stat. § 939.63 worked a substantive change in the law. Prior to our interpretation, neither the courts nor the Wisconsin Criminal Jury Instructions Committee responsible for drafting jury instructions, had interpreted the statute to require the nexus element, "that the defendant possessed the weapon to facilitate the commission of the predicate offense." Before our interpretation of Wis. Stat. § 939.63 in *Peete*, there was no nexus element and

no specific charge to the jury to prove that element. The State would have us ignore the intimate and essential relationship between the substantive element identified by *Peete*, and its practical effectuation, the instruction required by *Peete*. We hold that in this case, where a substantive right is recently identified on collateral review, and that right can only be effectuated by instructing the jury to make a specific finding, jury instruction is a necessary part of the substantive right. The defendant's substantive right to have the nexus element proven can only be met after the jury has received the necessary instruction on that element.

## BAR OR WAIVER

¶ 33. The State's next contention is that Howard's motion is barred by *Escalona-Naranjo*, 185 Wis. 2d 168. In that case, we interpreted Wis. Stat. § 974.06(4) to require that if a ground for relief was not raised in an original, supplemental or amended motion, the defendant had to show a sufficient reason why he or she had not asserted that ground for relief earlier; otherwise, the defendant's claim was barred. *Escalona-Naranjo*, 185 Wis. 2d at 181–82. The court of appeals concluded that the requirements of *Escalona* were met in Howard's case. *Howard*, 199 Wis. 2d at 461–62. "The fact that Howard could not have foreseen the affect [sic] of the *Peete* decision at the time of his appeal constitutes a sufficient reason for not raising the issue at an earlier date." *Id.*

¶ 34. In *Escalona-Naranjo*, the defendant asserted ineffective assistance of counsel claims in two § 974.02 postconviction motions. At the time of those earlier motions, he was also aware of the basis for a claim he later raised in a Wis. Stat. § 974.06(4) motion. We ruled that the defendant was precluded from rais-

ing a third allegation of ineffective assistance in a later § 974.06(4) motion, when he had known the basis for that allegation at the time of his earlier motions. *Escalona-Naranjo*, 185 Wis. 2d at 184. We read Wis. Stat. § 974.06 to limit even constitutional bases for a postconviction motion unless the court determines that a "sufficient reason" exists for the failure to allege, or to adequately raise, the issue in the original, supplemental or amended motion. 185 Wis. 2d at 181–82.

¶ 35. The State argues here that Howard should have preserved his objection to the lack of a nexus instruction despite the fact that Howard's case predated the *Peete* decision. Specifically, the State argues that Howard had available to him all of the statutes, legislative history, and the rules of statutory construction as Peete himself had. The State also asserts that even without *Peete*, Howard could have challenged the sufficiency of the evidence for the penalty enhancer.

¶ 36. The court of appeals, however, considered it impractical to expect a defendant to argue an unknown statutory interpretation. Despite the prescription that a statute cannot mean one thing prior to an interpretation, and mean something else afterward, the court of appeals concluded that a legal argument like Howard's cannot be made until a higher authority determines the correct application. *Howard*, 199 Wis. 2d at 462.

¶ 37. We agree with the court of appeals. Our construction of Wis. Stat. § 939.63 in *Peete* constituted a new rule of substantive law. Peete's success in arguing that the enhancer provision requires proof of the nexus beyond a reasonable doubt does not automatically preclude others, sentenced before Peete, from raising that same argument in a postconviction motion. Unlike the defendant in *Escalona-Naranjo*, Howard

was not aware of the legal basis for his present motion at the time of his trial and sentencing. Nor was Howard aware of the nexus requirement at the time of his earlier postconviction motions and appeal.

¶ 38.   To hold otherwise would require criminal defendants and their counsel to raise every conceivable issue on appeal in order to preserve objections to rulings that may be affected by some subsequent holding in an unrelated case. We do not believe that Wis. Stat. § 974.06 requires so much. Howard's case is just such an example of the "sufficient cause" exception to the finality of appellate issues under Wis. Stat. § 974.06.

¶ 39.   The State also contends that Howard waived his claim of error because he did not object to the penalty enhancer jury instruction as given. The court of appeals concluded that Howard did not object to the instructions as given because he did not foresee the new rule of *Peete*. *Howard*, 199 Wis. 2d at 463.

¶ 40.   The State's waiver analysis is also based on the premise that because the State proved actual possession, any defect in the jury instructions did not create a substantial probability that a different result would be likely on retrial. *State v. Wyss*, 124 Wis. 2d 681, 741, 370 N.W.2d 745 (1985), *overruled on other grounds, State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). We have already concluded, however, that the possession proved in this case was established without any proof beyond a reasonable doubt of the necessary nexus element.

¶ 41.   The State relies on *State v. Schumacher*, 144 Wis. 2d 388, 424 N.W.2d 672 (1988) to establish waiver. *Schumacher* in part relied on Wis. Stat. § 805.13,[11] to determine the breadth of the court of

---

[11] Wis. Stat. § 805.13(3) (1985–86)

appeals' discretion to review error based on instructions to which no objection had been made at trial. *Schumacher* did not involve a "new rule" basis for the claimed instructional error.

¶ 42. The *Schumacher* court concluded that the court of appeals does not have a broad discretionary power of review to reach waived jury instructions. As a caveat, however, the court stated that the intermediate court may still reach issues which are unwaivable. 144 Wis. 2d at 408 n.14. Unwaivable issues, such as ineffective assistance of counsel claims, ordinarily would not be brought up by the defendant at trial. Therefore, the court of appeals' discretionary power to review must extend to such unwaivable matters.

¶ 43. Here, Howard and his counsel in 1990 had no way to know how this court would construe Wis. Stat. § 939.63 by the time it decided *Peete* in 1994. We agree that Howard's counsel had an obligation to object at the instructions conference based on incompleteness or other error about which he knew or should have known. We cannot agree that Howard's counsel could have stated grounds for an objection "with particularity," based on the absence of a nexus element and corresponding instruction. *See* Wis. Stat. § 805.13(3). Howard has not waived this issue.

At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.

¶ 44. Had Howard made this objection at the time of the instructions conference in 1990, it is unlikely that the circuit court would have "easily remedied the deficiency." 144 Wis. 2d at 409. Howard did not waive the issue of the nexus element, and the court of appeals did not exceed its authority by its discretionary review of this question.

## INAPPLICABILITY OF HARMLESS ERROR ANALYSIS

¶ 45. The Due Process Clause protects a defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Winship*, 397 U.S. at 364. The burden of proving all elements of a crime beyond a reasonable doubt rests upon the State. *Muller v. State*, 94 Wis. 2d 450, 473, 289 N.W.2d 570 (1980).

¶ 46. Proper jury instruction is a crucial component of the fact-finding process. *State v. Schulz*, 102 Wis. 2d 423, 426, 307 N.W.2d 151 (1981). The jury must determine guilt or guiltlessness in light of the jury charge, and the validity of that determination is dependent upon the correctness, and completeness, of the instructions given. *See id.*, at 426–27. Elements of a crime are its requisite conduct, either an act or omission, and mental fault. Elements may include particular attendant circumstances, and sometimes, a specified result of the conduct. W. LaFave and A. Scott, Jr., *Handbook on Criminal Law* at 45 n.3 (1972).

¶ 47. We review jury instructions as a whole to determine whether there is a reasonable likelihood

that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard. *Avila*, 192 Wis. 2d at 889, (quotations omitted) citing *Victor v. Nebraska*, 114 S. Ct. 1239, 1243 (1994). An inadequate jury instruction can provide a ground for reversal because it deprives the accused of a jury determination that he or she engaged in constitutionally prohibitable conduct made unlawful by statute. *See, e.g., Osborne v. Ohio*, 495 U.S. 103, 123–26 (1990). The court cannot direct a verdict of guilty, no matter how overwhelming the evidence. *Duncan v. Louisiana*, 391 U.S. 145, 149–50 (1968).

¶ 48. In this case, the State contends that the harmless error analysis applies. The State specifically relies on *Illinois v. Pope*, 481 U.S. 497 (1987), to contend that any instructional error in Howard's case is harmless. In *Pope*, the Supreme Court recognized that the harmless error analysis is appropriate in the absence of error that renders the trial fundamentally unfair. 481 U.S. at 502. The *Pope* Court cited *Rose v. Clark*, 478 U.S. 570 (1986), as an example where the harmless error analysis was appropriate because the jury instruction did not "entirely preclude" the jury from considering the element of malice, even though it shifted the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510 (1979). *Pope*, 481 U.S. at 502–03. Similarly, in *Pope*, the jurors were "not precluded" from considering the question of value to determine whether a reasonable person would find value in the allegedly obscene work, even when the court erroneously instructed by giving a constitutionally infirm standard for "value". *Id.* at 503. Even if *Pope* focused on the effect, rather than on the character, of the error, *see United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988), we perceive a difference.

¶ 49. In Howard's case, the jury was "entirely precluded" from considering whether Howard possessed a dangerous weapon "to facilitate commission of the predicate crime." The absence of the nexus instruction thus renders Howard's conviction on the penalty enhance "fundamentally unfair." Unlike the facts in *Pope* and *Rose*, here there was no instruction on the nexus element. The *Howard* jurors were never asked to find whether Howard possessed a dangerous weapon to facilitate the predicate crime, nor were they instructed to presume that, if they found possession, they could find that Howard possessed the weapon to facilitate the underlying crime.

¶ 50. In other cases, reviewing courts have found the error harmless, because the instruction given on the element was somehow flawed. In none of those cases, however, was the required instruction totally absent. *Carella v. California*, 491 U.S. 263 (1989) (instructions containing conclusive presumption); *State v. Kuntz*, 160 Wis. 2d 722, 735, 467 N.W.2d 531 (1991) (jury instruction creating mandatory conclusive presumption regarding an element of the offense, presented an exceedingly rare case in which a conclusive presumption is harmless error). *But see State v. Alfonsi*, 33 Wis. 2d 469, 478, 147 N.W.2d 550 (1967) (trial court refused to give instruction on mens rea element, error prejudicial and new trial required); *State v. Moriarty*, 107 Wis. 2d 622, 631, 321 N.W.2d 324 (Ct. App. 1982) (instructing that defendant was armed, instead of instructing that defendant used or threatened to use a weapon during robbery, relieved the State of its burden to prove every fact essential to the crime, and thus was not harmless); *State v. Hurd*, 135 Wis. 2d at 275–76, (where trial court failed to

instruct on element of "wilfully," failure not harmless, new trial ordered).

¶ 51. In *Avila*, we distinguished the effect of flawed jury instructions from the complete absence of an essential instruction. We held that if the circuit court fails to instruct a jury about an essential element of the crime and the jury must find that element beyond a reasonable doubt, there is an automatic reversal of the verdict. If, however, there is some instruction on that element, albeit erroneous, and the jury is told that the element must be proven beyond a reasonable doubt, then the analysis is one of harmless error. *Avila*, 192 Wis. 2d at 893a.

¶ 52. The State disagrees that *Sullivan v. Louisiana*, 508 U.S. 275 (1993), cited by the *Avila* court, actually supports the *Avila* holding. The *Sullivan* Court recognized that most constitutional errors are amenable to the harmless error analysis. 508 U.S. at 279. Harmless error analysis looks to the basis on which the jury actually rested its verdict. *Id.* at 279 (citations omitted). In *Sullivan*, the jury found the defendant guilty of first degree murder, after receiving an unconstitutional instruction defining "reasonable doubt." *Id.* at 277. The Court distinguished this infirmity from one where the instructions create a presumption for an element of the crime, but where the jury finds the predicate facts beyond a reasonable doubt. Under the latter scenario, the court can conclude that the presumption "played no significant role in the finding of guilt beyond a reasonable doubt." *Id.* at 281.

¶ 53. But Howard's case is not one of an erroneous or a deficient instruction. This is a case where the required instruction on an element of the State's case was not given at all. It is a case where the failure to

prove nexus "affect[ed] the composition of the record." *See Sullivan*, 508 U.S. at 283 (Rehnquist, C.J., concurring).

¶ 54.   In its brief, that State contends that our rejection of the harmless error analysis in *Avila*, because the instructional error related to an element of the offense, conflicts with our summary affirmance of the decision in *State v. Nye*, 100 Wis. 2d 398, 302 N.W.2d 83 (Ct. App. 1981). According to the State, the *Nye* court "found harmless an erroneous jury instruction on one element of the crime of second degree sexual assault." State's Brief at 40.

¶ 55.   The State both overstates our ruling in *Avila*, and reads too broadly the conclusion in *Nye*. Our holding in *Avila* only concerned the total absence of an instruction on an element, and did not foreclose the harmless analysis for any error "related to an element." In *Nye*, the defendant was charged with having sexual intercourse with his 14-year old stepdaughter. One of the instructions to the jury lowered the burden of proof below the beyond a reasonable doubt standard. The instruction read "if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification . . ." *Nye*, 100 Wis. 2d at 400.

¶ 56.   The court of appeals held that the jury instruction lowered the burden of proof, and thus was unconstitutional. The court then proceeded to consider whether the instruction as given constituted harmless error. *Nye*, 100 Wis. 2d at 403. According to the evidence, the defendant and his stepdaughter had intercourse for approximately ten minutes, resulting in orgasm. The court concluded that it was effectively impossible for the jury to conclude that the act was not committed for the purpose of sexual arousal or gratification. *Id.* at 404. The court of appeals then surmised

that if the harmless error analysis applies when a court gives a jury instruction that unconstitutionally shifts the burden of proof, it clearly applies where the jury instruction merely lowers the burden of proof. *Id.* at 405.

¶ 57.  Significantly, the *Nye* court did not answer the question of whether a *failure* to instruct on an element (nonconsent) unconstitutionally resulted in a directed verdict for the State on that element, and thus could not be harmless. The *Nye* court did not reach that question because a plain reading of the statute and instruction indicated that nonconsent of the victim was not an element of that crime when committed against a person less than 15 years of age. *Id.* at 407–08. We do not read *Nye* to conflict with our holding in *Avila*.

¶ 58.  Howard may well be guilty of the offense charged against him, but he is entitled to a fair trial according to the established rules of procedures and principles of law, with a jury finding on each and every element of the crime charged. *See Hart v. State*, 75 Wis. 2d 371, 395, 249 N.W.2d 810 (1977) (citing *Boldt v. State*, 72 Wis. 7, 17, 38 N.W. 177 (1888)).

*By the Court.*—The decision of the court of appeals is affirmed.