STATE of Wisconsin, Plaintiff-Respondent,

v.

Anou LO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–0843. Oral argument February 12, 2003.—Decided July 11, 2003.*

2003 WI 107

(Also reported in 665 N.W.2d 756.)

1

For the defendant-appellant-petitioner there were briefs by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, and oral argument by *Robert R. Henak.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

An amicus curiae brief was filed by *Joseph N. Ehmann,* first assistant state public defender, and *William J. Tyroler,* assistant state public defender, on behalf of the Office of the State Public Defender.

An amicus curiae brief was filed by *Meredith J. Ross* and *Walter J. Dickey,* Madison, on behalf of the Frank J. Remington Center.

¶ 1. DAVID T. PROSSER, J.   This is a review of an unpublished decision of the court of appeals affirming an order of the Circuit Court for La Crosse County, Ramona A. Gonzalez, Judge. *State v. Anou Lo,* No. 01–0843, unpublished slip op. (Wis. Ct. App. Dec. 28, 2001).

¶ 2.   The petitioner, Anou Lo, asks that we overrule our decision in *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994) (*Escalona*), in which we held that any claim that could have been raised on direct appeal or in a previous Wis. Stat. § 974.06

(1999–2000)[1] postconviction motion is barred from being raised in a subsequent § 974.06 postconviction motion, absent a sufficient reason. Lo also requests that we retroactively apply our decision in *State v. Head,* 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, and thereby grant him a new trial so that a jury can be properly instructed on the elements of imperfect self-defense.

¶ 3. This case raises the question of whether our ruling in *Escalona* achieves a desired finality in the criminal appeals process and does so in a fair and efficient manner. We are mindful of the important interests and values articulated by counsel and of the practical difficulties identified by Judge Deininger in his concurring opinion. *Lo,* No. 01–0843, unpublished slip op., ¶¶ 56–58 (Deininger, J., concurring).

¶ 4. Having considered the arguments, we decline to overrule our holding in *Escalona.* We continue to believe that it represents the correct interpretation of Wis. Stat. § 974.06. With the understanding that *Escalona* is the law, the court will seek opportunities to work with the State and the defense bar to fashion remedies that fairly address the problems identified by the court of appeals.

¶ 5. The petitioner contends that our decision in *Head* should be applied retroactively. For the reasons set forth in Part IV of this opinion, we hold that *Head* should not be applied retroactively to litigants in collateral proceedings.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 volumes unless otherwise indicated.

## I

¶ 6.   Some of the facts of this case are in dispute. In the summer of 1995, members of TMC, a street gang in La Crosse, were involved in various shootings directed at friends and acquaintances of Anou Lo.[2] As a result, one of Lo's acquaintances gave him a handgun for protection.

¶ 7.   On July 6, 1995, Lo met friends with the intention of accompanying them to Trane Park. While the group was in transit, Lo learned that several TMC members had gathered at Hood Park, and he asked his group to go there. At Hood Park, Koua Vang, a member of TMC, and Hue Lee, a friend of Vang, were playing marbles with some young children. Hue Lee observed the car in which Lo was a passenger circle twice around the park. Then Lo entered the park with one of his friends, while the driver of the car and other passengers stayed behind.

¶ 8.   In the park, Lo yelled at Vang from a distance of 40 to 50 feet. An argument developed. Lo confronted Vang about rumors that the TMCs were out to get Lo's stepbrother. Vang claims that, during the argument, Lo asked him if he wanted to die. Vang became excited and Hue Lee tried to calm him down. In time, Lo and Vang decided to back off and go their separate ways.

¶ 9.   Lo claims that as he was attempting to leave the park, he saw Vang try to grab something underneath his shirt, from the front waistband of his pants. Thinking that Vang was trying to get a gun, Lo drew his

---

[2] An investigator for the City of La Crosse Police Department acknowledged that Lo was not a member of a gang at this time. He was only associated with members of the street gang referred to as the Imperial Gangsters.

own gun and fired it in Vang's direction four times. Lo and his friend then ran away.

¶ 10.   Vang was shot in the back of his right arm. At the time of the shooting, he was in fact carrying a gun in the front of his pants, but he denied reaching for it, explaining that he was simply putting marbles in his pocket.

¶ 11.   Lo was 16 years old at the time of the shooting. He was waived into criminal court and tried as an adult. On January 12, 1996, a jury found Lo guilty of attempted first-degree intentional homicide while armed and first-degree reckless endangerment while armed. The circuit court sentenced Lo on February 26, 1996, to consecutive terms of 20 years incarceration on the attempted homicide conviction and 9 years on the reckless endangerment conviction.

¶ 12.   After his conviction, Lo acquired new counsel and filed postconviction motions pursuant to Wis. Stat. § 974.02 and Wis. Stat. § (Rule) 809.30. In one of these motions, he challenged the effectiveness of his trial counsel. After an evidentiary hearing, Lo's motions were denied. Lo appealed two claims that he had raised in postconviction motions, including the claim of ineffective assistance of counsel. The court of appeals affirmed the conviction and the denial of postconviction relief. *State v. Lo,* No. 97–0023–CR, unpublished slip op. (Wis. Ct. App. June 25, 1998). Lo then made an unsuccessful pro se attempt at federal habeas relief.

¶ 13.   On March 6, 2000, Lo, again pro se, requested an order from the circuit court asking for information he needed to file a § 974.06 motion. In a Memorandum Decision and Order dated May 16, 2000, the circuit court denied the request on grounds that Lo could get the information from his prior attorneys. On January 17, 2001, Lo made a pro se § 974.06 motion,

which was denied by the circuit court because the claims were barred pursuant to *Escalona* in that the issues could and should have been raised on direct appeal.[3] The court of appeals affirmed the circuit court decision. In a concurring opinion, Judge Deininger raised questions whether *Escalona*'s construction of § 974.06(4) had achieved its goal of bringing finality to postconviction litigation. *Lo,* No. 01–0843, unpublished slip op., ¶¶ 55–58.

II

¶ 14. Once again this court is called upon to review the proper construction of § 974.06(4). The construction of a statute is a question of law and is reviewed de novo. *Escalona,* 185 Wis. 2d at 175–76. Our goal is to discern and give effect to the intent of the

---

[3] Lo's § 974.06 motion identified numerous grounds for relief: the trial court's failure to instruct on reckless endangerment as a lesser included offense of the attempted homicide; admission of evidence that Lo had sexually assaulted another youth; admission of evidence that Lo was on juvenile supervision; failure to identify specifically who was endangered under Count 2; reversal was warranted in the interests of justice; errors in the jury instructions and prosecutorial misconduct and ineffectiveness of counsel to properly object; failure to exclude "other acts" evidence and ineffectiveness of trial counsel for not properly objecting to such evidence; ineffectiveness of counsel for not retaining a ballistic expert; presence of a biased juror on the jury; and defective jury instructions regarding reasonable doubt and imperfect self-defense. For purposes of this opinion, we concern ourselves not with any specific substantive claim Lo addresses, but with the sufficient reason given by Lo for not having raised these claims earlier, which was ineffective assistance of both postconviction and appellate counsel.

legislature. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999).

¶ 15.   Although our decision in *Escalona* discussed the origins and purpose of § 974.06, *see Escalona*, 185 Wis. 2d at 176–78, 181–82, we take this opportunity to augment that discussion and reinforce our holding that claims of error that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion, absent a showing of a sufficient reason.

¶ 16.   Section 974.06 was created by the Wisconsin legislature in 1969 as the first uniform postconviction procedure in the state's history.[4] Heather M. Hunt, Note, *State v. Escalona-Naranjo: A Limitation on Criminal Appeals in Wisconsin?*, 1997 Wis. L. Rev. 207, 210. The decision to institute a uniform postconviction remedy was made by the Criminal Rules Committee of the Judicial Council. *Id.* at 211 The decision was influenced by a letter from Justice Myron L. Gordon, who expressed dissatisfaction over the time that the Wisconsin Supreme Court spent reviewing habeas corpus matters and recommended that circuit courts handle such petitions. *Id.* (citing Minutes of Meeting of the Judicial Council 2 (June 16, 1967)).

¶ 17.   In establishing a uniform postconviction remedy, the Criminal Rules Committee set forth a procedure "under sec. 974.06 [that] was 'designed to replace habeas corpus as the primary method in which a defendant can attack his conviction after the time for appeal has expired.'" *Escalona*, 185 Wis. 2d at 176 (citing Howard B. Eisenberg, *Post-Conviction Remedies*

---

[4] Section 974.06 was created by chapter 255, section 63, Wis. Laws of 1969, which was effective July 1, 1970.

*in the 1970's,* 56 Marq. L. Rev. 69, 79 (1972)). Section 974.06 was modeled after 28 U.S.C. § 2255 (2000).[5] However, subsection (4) was taken from section 8 of the 1966 Uniform Post-Conviction Procedure Act (1966 UPCPA or 1966 Uniform Act). Hunt, *supra,* at 211. Section 974.06(4) reads as follows:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

Wis. Stat. § 974.06(4).

¶ 18. There is no dispute that the language of § 974.06(4) was adapted from section 8 [Waiver of or Failure to Assert Claims] of the 1966 UPCPA, *see* Unif. Post-Conviction Procedure Act § 8, 11A U.L.A. 375 (Master ed. 1995), even though the UPCPA was not adopted in its entirety by the Wisconsin legislature. *Escalona,* 185 Wis. 2d at 177–78. The comment to § 974.06(4) acknowledges that subsection (4) came from the UPCPA and asserts that it was "designed to compel a prisoner to raise all questions available to him in one motion." Comment to Wis. Stat. Ann. § 974.06 (West Supp. 1998).

¶ 19. The stated legislative intent is consistent with the purpose of the 1966 UPCPA. The UPCPA was

---

[5] 28 U.S.C. § 2255 was enacted June 25, 1948, ch. 646, 62 Stat. 967 (1948), and amended May 24, 1949, § 114, ch. 139, 63 Stat. 105.

drafted to curtail the explosion of federal habeas corpus petitions in the federal courts that resulted from an absence of an "all-embracing system of post-conviction relief capable of affording the prisoner a forum for his claims based on the United States Constitution." 1966 UPCPA Commissioners' Prefatory Note, 11A U.L.A. 269–270.

¶ 20.   To accomplish this goal, the Commissioners advocated "constructive action" at the state level to eliminate the "abuses" of habeas corpus. *Id.* at 269. This strategy involved (1) providing a single, unitary, post-conviction remedy to be used in place of all other state remedies (except direct review); (2) providing a remedy for all grounds for attacking the validity of a conviction or sentence in a criminal case; and (3) requiring a defendant to present all of his or her claim(s) for attack on a conviction or sentence in his or her initial postconviction proceeding, unless there exists a sufficient reason why the claim(s) were not raised in the initial proceeding. *See id.* at 270–71; *see also Escalona,* 185 Wis. 2d at 177 n.8.

¶ 21.   The second objective noted above, that of providing "a remedy for all grounds for attacking the validity of a conviction or sentence in a criminal case," was embodied in section (1)(a) of the 1966 Uniform Act. Section (1)(a) defined the scope of the remedy under the 1966 Uniform Act.[6] The remedy was described as "similar" to the remedy afforded by 28 U.S.C. § 2255. Comment, 11A U.L.A. 275. In fact, however, it was a

---

[6] Section 1 of the 1966 Uniform Post-Conviction Procedures Act reads in part:

§ 1. [Remedy—To Whom Available—Conditions].

(a) Any person who has been convicted of, or sentenced for, a crime and who claims:

11

broader remedy than 28 U.S.C. § 2255. Wisconsin chose not to adopt section 1 of the UPCPA. Instead, it adopted language "taken directly from 28 U.S.C. § 2255." Comment, ch. 255, Laws of 1969.

¶ 22.   The third objective noted above was embodied in section 8 of the 1966 Uniform Act, and section 8 was the source of § 974.06(4).

¶ 23.   Two years after the new procedure took effect, in *Peterson v. State*, 54 Wis. 2d 370, 195 N.W.2d 837 (1972), this court described the function of a § 974.06 motion:

> The postconviction motion under sec. 974.06, Stats., is not a substitute for a motion for a new trial. A sec.

---

(1) that the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this state;

(2) that the court was without jurisdiction to impose sentence;

(3) that the sentence exceeds the maximum authorized by law;

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

(5) that his sentence has expired, his probation, parole, or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

may institute, without paying a filing fee, a proceeding under this Act to secure relief.

Unif. Post-Conviction Procedure Act § 8, 11A U.L.A. 274–75 (Master ed. 1995).

974.06 motion can be made only after the defendant has exhausted his direct remedies which consist of a motion for a new trial and appeal. A sec. 974.06 motion is limited in scope to matters of jurisdiction or constitutional dimensions. The motion must not be used to raise issues disposed of by a previous appeal.

*Id.* at 381 (footnotes omitted).

¶ 24. The *Peterson* decision discussed the scope of the § 974.06 motion, saying that such issues as "sufficiency of the evidence, jury instructions, error in admission of evidence, and other procedural errors cannot be reached by a § 974.06 motion." *Id.* It did not, however, engage in an explicit textual analysis addressing the issue of when a claim was barred because of some prior proceeding.

¶ 25. In *Bergenthal v. State,* 72 Wis. 2d 740, 242 N.W.2d 199 (1976) (*Bergenthal II*), four years after *Peterson,* the court gave § 974.06 an expansive interpretation. Bergenthal was convicted of first-degree murder and endangering safety by conduct regardless of human life. *State v. Bergenthal,* 47 Wis. 2d 668, 671, 178 N.W.2d 16 (1970) (*Bergenthal I*). At his trial, Bergenthal contended that certain materials enclosed in a brown sealed envelope possessed by the State were exculpatory and subject to in camera inspection. *Bergenthal II,* 72 Wis. 2d at 743. The circuit court ruled that the evidence was not exculpatory. *Id.* at 746.

¶ 26. In his post-verdict motion, Bergenthal raised 100 claims of error, one of which was the circuit court's failure to disclose the contents of the envelope. *Bergenthal I,* 47 Wis. 2d at 673–74. Following the denial of his postconviction motion, all of Bergenthal's claims were raised on appeal *except* the court's failure to disclose the contents of the envelope. *Id.*

13

¶ 27. After Bergenthal's conviction was affirmed by this court, Bergenthal filed a § 974.06 motion challenging the circuit court's failure to disclose the items in the envelope. *Bergenthal II,* 72 Wis. 2d at 742–43. The circuit court incorrectly assumed that the issue surrounding the brown sealed envelope had been considered and rejected by this court. Operating on that assumption, the circuit court concluded that the opinion of this court on direct appeal had disposed of the issue. It denied the motion, observing that a § 974.06 motion could not be used as a vehicle for a second appeal on grounds already reviewed. *Id.* at 745. This court disagreed, stating that "[e]ven though the issue might properly have been raised on appeal, it presents an issue of significant constitutional proportions and, therefore, must be considered in this motion for postconviction relief." *Id.* at 748 (citing *Loop v. State,* 65 Wis. 2d 499, 222 N.W.2d 694 (1974)).

¶ 28. The significance of the *Bergenthal II* holding was that it permitted a criminal defendant to raise a ground for relief in a § 974.06 motion that could have been raised on direct appeal but was not, without the defendant showing a sufficient reason why the issue had not been raised. After *Bergenthal II,* a criminal defendant was not required to show a reason why an issue had not been raised until the defendant filed a second or subsequent § 974.06 motion. As a result, a criminal defendant had the right to a § 974.02 motion after trial, followed by a direct appeal, plus another chance to raise claims in a § 974.06 motion, even if the grounds claimed in the § 974.06 motion were available at the time of the § 974.02 motion and direct appeal. In

reaching this conclusion, the *Bergenthal II* court pointed to § 974.06(3)[7] but it did not construe § 974.06(4).

¶ 29. In *Escalona,* this court revisited the question of whether a claim that could have been raised on direct appeal was barred from being raised in a § 974.06 motion absent a showing of a sufficient reason. The case involved Barbaro Escalona-Naranjo, who was convicted in February 1986 of two counts of possession of controlled substances with intent to deliver. *Escalona,* 185 Wis. 2d at 173–74. Prior to sentencing, Escalona-Naranjo's trial counsel filed a motion to vacate the conviction and requested a competency hearing at which Escalona-Naranjo was found to be competent for sentencing. *Id.* at 174. After sentencing in September

---

[7] Wisconsin Stat. § 974.06(3) provides:

Unless the motion and the files and records of the action conclusively show that the person is entitled to no relief, the court shall:

(a) Cause a copy of the notice to be served upon the district attorney who shall file a written response within the time prescribed by the court.

(b) If it appears that counsel is necessary and if the defendant claims or appears to be indigent, refer the person to the state public defender for an indigency determination and appointment of counsel under ch. 977.

(c) Grant a prompt hearing.

(d) Determine the issues and make findings of fact and conclusions of law. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the person as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the person or resentence him or her to grant a new trial or correct the sentence as may appear appropriate.

1986, a notice of intent to seek postconviction relief was filed by defense counsel under Wis. Stat. § (Rule) 809.30(2)(b). *Id.* Postconviction motions requesting a new trial, competency redetermination, and resentencing were filed pursuant to § 974.02. *Id.* The circuit court denied the motions and the court of appeals affirmed. *Id.* at 174–75.

¶ 30. Escalona-Naranjo then filed a § 974.06 motion in July 1990, which was amended in February 1991, claiming ineffective assistance of trial counsel. *Id.* at 175. In response to Escalona-Naranjo's § 974.06 motion, the State contended that Escalona-Naranjo had simply rephrased issues that had already been raised in the 1986 § 974.02 motion and appeal. *Id.* The circuit court agreed with the State and the court of appeals certified the case to this court. *Id.*

¶ 31. In affirming the circuit court's decision, this court overruled the holding in *Bergenthal II* and held that a criminal defendant was required to consolidate all postconviction claims into his or her original, supplemental, or amended motion. *Id.* at 181–82. If a criminal defendant fails to raise a constitutional issue that could have been raised on direct appeal or in a prior § 974.06 motion, the constitutional issue may not become the basis for a subsequent § 974.06 motion unless the court ascertains that a sufficient reason exists for the failure either to allege or to adequately raise the issue in the appeal or previous § 974.06 motion. *Id.* at 181–82.[8] In reaching this holding, *Escalona* analyzed

---

[8] In *State v. Klimas,* 94 Wis. 2d 288, 288 N.W.2d 157 (Ct. App. 1979), the court of appeals "relied on the *Bergenthal* conclusion that all constitutional issues must be considered in postconviction relief proceedings." *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 182 n.11, 517 N.W.2d 157 (1994). However, this

16

the plain language of § 974.06(4) and its origin, namely, the 1966 UPCPA, and found the legislative history to be decisive.

¶ 32. *Escalona* correctly concluded that all grounds for postconviction relief under § 974.06 must be raised in the petitioner's original, supplemental, or amended motion. *Id.* at 181.[9] Further, the majority interpreted an "original, supplemental, or amended motion" to encompass both a § 974.06 motion and the direct appeal. *Id.* The dissent argued that the term "motion" referred to a previous motion brought under § 974.06 and was not intended to include direct review. *Id.* at 191–94 (Abrahamson, J., dissenting).

¶ 33. Lo adopts the *Escalona* dissent's textual analysis. He also argues that the relationship between section 8 of the 1966 UPCPA and two predecessor sections from the 1955 version of the UPCPA (1955 Uniform Act) supports the *Escalona* dissent's position that a direct appeal and a § 974.06 postconviction motion are to be treated differently under § 974.06.

¶ 34. Lo presents a scholarly discussion of the 1955 Uniform Act, as well as the 1966 UPCPA, describing how language from section 1 of the 1955 Uniform Act was incorporated into section 8 of the 1966 UPCPA. Lo explains that section 1 of the 1955 Uniform Act made postconviction relief available under the Act,

court overruled the language in *Klimas* that allowed all constitutional issues to be considered in postconviction motions regardless of whether such constitutional issues could have been raised earlier. *Id.*

[9] Support for this conclusion can be found in the note to § 63, ch. 255, Laws of 1969, which reads: "Sub. (4) is taken from the Uniform Post-Conviction Procedure Act and is *designed to compel a prisoner to raise all questions available to him in one motion.*" Note to § 63, ch. 255, Laws of 1969 (emphasis added).

"provided the alleged error has not been previously and finally litigated or waived *in the proceedings resulting in the conviction* or in any other proceeding that the petitioner has taken to secure relief from his conviction." 11A U.L.A. 267 (emphasis added). This section plainly precluded consideration of issues adjudicated or waived *in a direct appeal.* By contrast, Lo argues, section 8 of the 1955 Uniform Act dealt with successive petitions under that Act.[10]

¶ 35. In the 1966 Uniform Act, language from 1955 section 1 was consolidated into the new section 8 as follows:

All grounds for relief available to an applicant

---

[10] The 1955 Uniform Post-Conviction Procedure Act reads in part:

§ 1. [Remedy—To Whom Available—Conditions].—Any person convicted of a felony and incarcerated under sentence of [death or] imprisonment who claims that the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy, may institute a proceeding under this Act to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction or in any other proceedings that the petitioner has taken to secure relief from his conviction.

. . . .

§ 8. [Waiver of Claims].—All grounds for relief claimed by a petitioner under this Act must be raised in his original or amended petition, and any grounds not so raised are waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

18

under this Act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

11A U.L.A. 375.

¶ 36. Lo contends that the phrase "any ground finally adjudicated or not so raised" is tied to the "original, supplemental or amended application" *under the Act,* not to any previous appeal, and that only a ground "knowingly, voluntarily and intelligently waived" is tied to the applicant's direct appeal. This reading of the 1966 Uniform Act, he argues, provides the proper interpretation of current § 974.06(4), which reads:

All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

Wis. Stat. § 974.06(4).

¶ 37. We cannot agree with Lo's construction of the statute. Section 974.06(4) begins with the sentence: "All grounds for relief *available* to a person under this

19

section must be raised in his or her original, supplemental or amended motion." Wis. Stat. § 974.06(4) (emphasis added). Some grounds for relief are not *available* under § 974.06. For instance, if a ground for relief does not satisfy a criterion in subsection (1), it is *not* available. *See Peterson,* 54 Wis. 2d at 381.

¶ 38.  More important, however, the second sentence of the subsection spells out three additional grounds that are *not* available *without sufficient reason,* namely (1) grounds that have been finally adjudicated; (2) grounds that were not raised in a previous proceeding; and (3) grounds that were knowingly, voluntarily and intelligently waived.

¶ 39.  Under the plain language of subsection (4), any grounds "knowingly, voluntarily and intelligently waived" are waived "in the proceeding that resulted in the conviction or sentence," because there is no break between the waiver language and the phrase "in the proceeding that resulted in the conviction or sentence." Wis. Stat. § 974.06(4). Lo concedes as much.

¶ 40.  Nonetheless, Lo contends that the phrase "any grounds finally adjudicated or not so raised" has no link to the phrase "in the proceeding that resulted in the conviction or sentence." If this were true, it would mean that a "ground" "finally adjudicated" by this court in a direct appeal from a conviction would be subject to a § 974.06 motion before a circuit judge. This is an unacceptable reading of the statute. "The motion must not be used to raise issues disposed of by a previous appeal." *Peterson,* 54 Wis. 2d at 381.

¶ 41.  The phrase "or not so raised" is inextricably linked to the phrase "finally adjudicated." Lo cannot have one without the other. This means that "not so raised" also is tied to "the proceeding that resulted in the conviction or sentence." Lo's interpretation of the

20

subsection would permit a defendant to consciously skip grounds for relief on direct appeal and then raise them in a § 974.06 motion.

¶ 42.   We acknowledge that the phrase "original, supplemental or amended motion" could be made more clear. The *Escalona* court interpreted the term "motion" in that phrase to include both a previous § 974.06 motion and a direct appeal. *Escalona,* 184 Wis. 2d at 181. This interpretation is buttressed by § 974.06(2), which provides: "A motion for such relief is part of the original criminal action, *is not a separate proceeding* and may be made at any time." Wis. Stat. § 974.06(2) (emphasis added). This subsection describes a proceeding different from a proceeding in federal court under 28 U.S.C. § 2255, which is regarded as an independent civil proceeding. *Heflin v. United States,* 358 U.S. 415, 418 n.7 (1959). It is also different from a proceeding under the UPCPA, which is also regarded as civil. *See Jones v. State,* 479 N.W.2d 265, 269 (Iowa 1991) (applying Iowa's version of § 974.06).

¶ 43.   However, if the phrase "original, supplemental or amended motion" were interpreted as applying only to a motion under § 974.06, that would not help the defendant.

> Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence [e.g., trial, postconviction motion, and direct appeal] or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion [e.g., a motion *after* appeal under § 974.06], unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised *in the original, supplemental or amended motion.*

21

Wis. Stat. § 974.06(4) (emphasis added). In other words, a court may find that the defendant has asserted a ground for relief *"in the original, supplemental or amended motion"* which, for sufficient reason, "was not asserted or inadequately raised" "in the proceeding that resulted in conviction or sentence or in any other proceeding the person has taken to secure relief." If the phrase "the original, supplemental or amended motion" were interpreted to mean the defendant's *first* motion under § 974.06, then the "sufficient reason" requirement would apply to only a *second* § 974.06 motion. This would make no sense in terms of either policy or grammar.

¶ 44. Consequently, we reaffirm our holding in *Escalona* that all claims of error that a criminal defendant can bring should be consolidated into one motion *or* appeal, and claims that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 postconviction motion absent a showing of a sufficient reason for why the claims were not raised on direct appeal or in a previous § 974.06 motion. *Escalona,* 185 Wis. 2d 168.[11]

---

[11] Our ruling would only be applicable in the situation where a criminal defendant actually filed a § 974.02 motion or pursued a direct appeal. Therefore, in *Loop v. State,* 65 Wis. 2d 499, 222 N.W.2d 694 (1974), where the defendant filed a § 974.06 motion challenging his conviction without having previously filed a § 974.02 motion or pursued a direct appeal, he was permitted to raise a constitutional issue not raised on direct appeal because no direct appeal had been sought. We agree with this analysis. However, we reaffirm *Escalona's* criticism of that part of *Loop* which stated: "Issues of constitutional dimension

¶ 45. *Escalona* declared that "we need finality in our litigation." *Id.* at 185. This statement comports with concerns expressed by the National Conference of Commissioners on Uniform State Laws in 1966. The Prefatory Note to the 1966 Uniform Act states:

> If a person has been unconstitutionally imprisoned while the numerous state remedies are pursued for from two to ten years, the situation is abhorrent to our sense of justice. On the other hand, if the greatest number of applications for post-conviction relief are groundless, the wear and tear on the judicial machinery resulting from years of litigation in thousands of cases becomes a matter of serious import to courts and judges. The element of expense is not to be ignored.

11A U.L.A. 270.

¶ 46. It is apparent that the Commissioners' concerns with expense and "years of litigation" reflect a goal of finality in the criminal appeals process. This finality is inherently related to the purpose of vindicating justice via a simplified and adequate postconviction remedy. Our construction of § 974.06(4) furthers these mutually related concerns without compromising fairness. *Escalona* was correct in asserting that the purpose of the UPCPA was "to compel a prisoner to raise all grounds regarding postconviction relief in his or her original, supplemental, or amended motion, thereby cutting off successive frivolous motions." *Escalona*, 185 Wis. 2d at 177.

---

can be raised on direct appeal and can also be raised on 974.06 motions." *Loop*, 65 Wis. 2d at 502; *see also Escalona*, 185 Wis. 2d at 184–85 (discussing *Loop*). If, after a direct appeal, a § 974.06 motion was filed but it did not raise a constitutional claim, then that claim is barred if it could have been raised on direct appeal and there is no showing of a "sufficient reason" as to why it was not raised.

¶ 47. This court's ruling in *Escalona* is supported by courts in other jurisdictions that have adopted the 1966 UPCPA in whole or in part. *See, e.g., Hoffman v. State,* 868 P.2d 516 (Idaho Ct. App. 1994); *Berryhill v. State,* 603 N.W.2d 243 (Iowa 1999); *Gassler v. State,* 590 N.W.2d 769 (Minn. 1999); *Carter v. State,* 936 P.2d 342 (Okla. Crim. App. 1997); *Drayton v. Evatt,* 430 S.E.2d 517 (S.C. 1993).

¶ 48. The same result is seen in federal court decisions interpreting 28 U.S.C. § 2255. *See, e.g., United States v. Samuelson,* 722 F.2d 425 (8th Cir. 1983); *Torres v. United States,* 469 F.2d 651 (9th Cir. 1972); *Mixen v. United States,* 469 F.2d 203 (8th Cir. 1972), *cert. denied,* 412 U.S. 906 (1973); *Overton v. United States,* 450 F.2d 919 (5th Cir. 1971); *Cardarella v. United States,* 375 F.2d 222 (8th Cir. 1967), *cert. denied,* 389 U.S. 882 (1967); *United States v. Edmonson,* 922 F. Supp. 505 (D. Kan. 1996), *aff'd* 107 F.3d 22 (10th Cir. 1997), *cert. denied,* 521 U.S. 1128 (1997).

¶ 49. We conclude that *Escalona* correctly interpreted Wis. Stat. § 974.06(4) and remains good law.

### III

¶ 50. In the order granting the petition for review, we asked the parties to address points raised by Judge David Deininger in his concurring opinion in *State v. Lo,* No. 01–0843, unpublished slip op. In his opinion, Judge Deininger identified complications resulting from the *Escalona* decision. He wrote insightfully:

> In an increasing number of appeals from the denial of motions brought under Wis. Stat. § 974.06, especially those brought by pro se inmates, we are seeing an assertion that the reason the newly raised claims of error were not raised in previous postconviction or

24

appellate proceedings is that postconviction or appellate counsel rendered ineffective assistance by failing to present the allegedly meritorious claims. In order to determine whether the new claims are properly before the court, the circuit court and/or this court must first evaluate the "sufficiency" of the proffered reason, which, as the majority's present analysis demonstrates, will often require a consideration of the merits of the underlying, newly asserted claim. And, even if we or the circuit court conclude that the claim has no merit, and thus that postconviction or appellate counsel's failure to raise the claim did not represent either deficient performance or prejudice to the defendant, the defendant has essentially obtained what § 974.06 and *Escalona-Naranjo* ostensibly deny: the consideration of the merits of the defendant's newly asserted claim, for which sufficient reason has not been shown for an earlier failure to raise it.

Further complicating the analysis is the fact that many of the newly raised claims, as in this case, involve an assertion that *trial* counsel was ineffective for failing to make some request or objection during trial or pre-trial proceedings; and that subsequent counsel were ineffective for failing to raise a claim of ineffective assistance of trial counsel. Thus, on a record which contains neither a trial court ruling on a now disputed issue, nor a *Machner* hearing on why trial counsel failed to raise the issue, we or the circuit court must ponder the following question: Is there merit to the now raised issue, such that trial counsel was deficient for not making a request or objection regarding it, thereby prejudicing the defendant, and thereby also rendering postconviction and/or appellate counsel's performance and prejudicial for failing to assert trial counsel's ineffectiveness, such that the defendant has presented a sufficient reason for the failure to raise the issue in earlier postconviction or appellate proceedings, which would permit him to now bring the issue before the court for a consideration of its merits?

25

*Lo*, No. 01–0843, unpublished slip op., ¶¶ 56–57.

¶ 51.   The State supports these observations and asserts in its brief: "The problem is not *Escalona-Naranjo*'s interpretation of § 974.06. The problem is that courts have erroneously assumed that ineffective assistance of § 809.30 counsel is a sufficient reason to permit a defendant to raise previously unraised issues in a successive § 974.06 motion. That assumption is wrong." The State thereafter proposes that the proper procedure for challenging the effectiveness of appellate counsel is to petition the court of appeals for a writ of habeas corpus. If the court of appeals determines that the petitioner's claim is meritorious, the remedy is a new appeal.

¶ 52.   Lo and the two amici, the Frank J. Remington Center and the Office of State Public Defender, vigorously criticize this proposed remedy.

¶ 53.   Lo devoted most of his argument to the proposition that *Escalona* was wrongly decided and should be overruled. His mission was not to attempt to find the best way to implement *Escalona*. His mission was to bury the case.

¶ 54.   This court determined in *State v. Knight*, 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), that a defendant claiming ineffective assistance of appellate counsel should petition the appellate court that heard the appeal for a writ of habeas corpus. In *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 556 N.W.2d 136 (Ct. App. 1996), the court of appeals drew a distinction between the performance of appellate counsel and the performance of postconviction counsel and directed that claims of ineffective assistance of postconviction counsel be raised in the circuit court "either by a petition for habeas corpus or a motion under § 974.06, Stats." *Id.* at 681. Among other things, the *Rothering*

26

court determined that (1) appellate counsel is not deficient for failing to brief waived issues, *id.* at 681 n.6; and (2) postconviction counsel may be ineffective in failing to preserve issues that could have been raised on direct appeal, *id.* at 682. It also raised questions about what constitutes "sufficient reason" to raise an issue that could have been raised in a direct appeal. *Id.*

¶ 55. The State contends that the *Rothering* decision was erroneous. It proposes concentrating review of ineffective assistance by postconviction and appellate counsel in a single habeas corpus petition in the court of appeals. It also proposes standards for pleading and reviewing ineffective assistance of appellate counsel.

¶ 56. Some of the answers to these issues may be more a matter of wise policymaking than statutory interpretation. To promote reasonable finality, we are interested in the rules and practices in other jurisdictions, including the federal courts, as well as a discussion of a variety of options, before we attempt to fashion a solution. We are concerned about fairness to both defendants and the government and potential shifts in workload among courts.

¶ 57. We are not convinced that this case is the appropriate vehicle to answer the multiple questions that have been raised. The issues have not been fully joined. Consequently, we defer judgment with the intent of seeking new opportunities to review the issues.

## IV

¶ 58. We next address whether our decision in *State v. Head*, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, should be applied retroactively to cases on collateral review. If applied retroactively, Lo's conviction for attempted first-degree homicide would probably be re-

versed on the basis that the jury instruction for unnecessary defensive force (imperfect self-defense) did not require the State to prove beyond a reasonable doubt that Lo did not actually believe that he was in imminent danger of death or great bodily harm.

¶ 59. We pause for a moment to restate the procedural history. At trial, Lo argued that he shot Koua Vang in self-defense. The circuit court determined that the defendant had adequately raised the issue and gave the standard jury instructions on both perfect and imperfect self-defense. Lo's trial counsel offered no alternative instruction on imperfect self-defense and made no objection to the instruction.

¶ 60. Lo's postconviction counsel filed a motion claiming ineffective assistance of trial counsel. However, he made no claim about the deficiency of the jury instruction on imperfect self-defense. On appeal from the conviction and the denial of the postconviction motion, he made no complaint about the jury instruction on imperfect self-defense. Lo's appeal was decided by the court of appeals on June 25, 1998. This was more than four years before the *Head* decision was released on July 11, 2002.

¶ 61. Lo filed a § 974.06 motion on January 17, 2001. The motion did not raise the issue presently before the court and was denied. The court of appeals affirmed the denial in a 30–page opinion by Judge Roggensack on December 28, 2001. We granted Lo's pro se petition for review on April 29, 2002, before the *Head* case was decided. In short, Lo never challenged the imperfect self-defense jury instruction on the ground before us now until he filed his brief in this court. As a result, if we were to retroactively apply the decision in *Head* to this case, we would arguably open to collateral

attack 10 years of homicide convictions that involved the standard jury instruction on imperfect self-defense. We decline to apply *Head* retroactively to cases on collateral review.

¶ 62.  Our decision in *Head* may fairly be described as a "new rule" because it imposes a new obligation on the State and because it was not dictated by precedent existing at the time of the defendant's conviction.[12] *Graham v. Collins,* 506 U.S. 461, 467 (1993) (citing *Teague v. Lane,* 489 U.S. 288, 301 (1989)). At the same time, we did not overrule *State v. Camacho,* 176 Wis. 2d 860, 501 N.W.2d 380 (1993); we modified its holding. *Head,* 255 Wis. 2d 194, ¶ 104.

¶ 63.  As we noted in *State v. Howard,* 211 Wis. 2d 269, 282, 564 N.W.2d 753 (1997), *overruled on other grounds by State v. Gordon,* 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765, the United States Supreme Court set the parameters for the federal doctrine of non-retroactivity in collateral proceedings in its *Teague* decision. New rules merit retroactive application *on collateral review* only in two instances. "First, a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague,* 489 U.S. at 307 (quoting *Mackey v. United States,* 401 U.S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part)). "Second, a new rule should be applied retroactively if it requires the observance of 'those procedures that are implicit in

---

[12] "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane,* 489 U.S. 288, 301 (1989).

the concept of ordered liberty.' " *Id.* (citing *Mackey,* 401 U.S. at 693) (Harlan, J., concurring in part and dissenting in part) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325 (1937))). In *Graham,* the Court defined the second element of retroactivity on collateral review as one involving a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *Graham,* 506 U.S. at 478. The Court explained that this retroactivity exception is meant to apply to only a small core of rules that are implicit in the concept of ordered liberty. *Id.*

¶ 64. The statutes at issue in *Head* are Wis. Stat. §§ 940.01(2)(b) and 940.05. Wisconsin Stat. § 940.01 provides that "whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony." Subsection (2) then provides:

(2) Mitigating Circumstances. The following are affirmative defenses to prosecution under this section which mitigate the offense to 2nd-degree intentional homicide under s.940.05:

. . . .

(b) Unnecessary defensive force. Death was caused because the actor believed he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

¶ 65. Subsection (3) sets out the burden of proof:

(3) Burden of Proof. When the existence of an affirmative defense under sub. (2) has been placed in issue by the trial evidence, the state must prove beyond a reasonable doubt that the facts constituting the defense did not exist in order to sustain a finding of guilt under sub. (1).

30

¶ 66. The first-degree intentional homicide statute (§ 940.01) interacts with the second-degree intentional homicide statute (§ 940.05), which reads in part:

> (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class B felony if:

> (a) In prosecutions under s. 940.01, the state fails to prove beyond a reasonable doubt that the mitigating circumstances specified in s. 940.01(2) did not exist as required by s. 940.01(3).

¶ 67. Our holding in *Head* modified this court's ruling in *Camacho* "to the extent that it states that Wis. Stat. § 940.01(2)(b) contains an objective threshold element requiring a defendant to have a *reasonable* belief that she was preventing or terminating an unlawful interference with her person in order to raise the issue of unnecessary defensive force (imperfect self-defense)." *Head,* 255 Wis. 2d 194, ¶ 104. The *Head* court concluded that

> when imperfect self-defense is placed in issue by the trial evidence, the state has the burden to prove that the person had no *actual belief* that she was in imminent danger of death or great bodily harm, or no *actual belief* that the amount of force she used was necessary to prevent or terminate this interference. If the jury concludes that the person had an actual but unreasonable belief that she was in imminent danger of death or great bodily harm, the person is not guilty of first degree murder but should be found guilty of second-degree intentional homicide.

*Id.,* ¶ 103 (emphasis added).

¶ 68. *Head* did not shift the burden of proof to the State. The State always had the burden of proof on imperfect self-defense. Instead, it required the State to

prove beyond a reasonable doubt that the defendant did not have an actual belief that he or she was in imminent danger of death or great bodily harm *or* an actual belief that the force used was necessary to defend the endangered person. *Head* requires the State to prove *actual* belief as opposed to *reasonable* belief, but this modification involves proof of a fairly subtle difference in state of mind.

██

¶ 69.    In Lo's case, the circuit court determined that Lo had adequately raised self-defense, and it presented perfect and imperfect self-defense jury instructions to the charge of attempted first-degree intentional homicide.[13] Consequently, the circuit court used Wis JI—Criminal 1014, which applied this court's decision in *Camacho* and defined imperfect self-defense to require that Lo "reasonably believed" that, by shooting Koua Vang, he prevented or terminated an unlawful interference with his person. The jury instruction provided:

> [i]f the defendant intended to kill Koua Vang; his acts demonstrated unequivocally, under all the circumstances, that he intended to kill and would have killed Koua Vang, except for the intervention of another person or some extraneous factor; *and he did not reasonably believe that he was preventing or terminating an unlawful interference with his person* or did not actually believe the force used was necessary to prevent

---

[13] Lo's claim of self-defense was based on the fact that Koua Vang was a member of the TMCs; that the TMCs had threatened to "get" Lo and his brothers; that there had been other shootings committed by TMC members prior to the incident between Lo and Vang; that, before Lo shot Vang, Vang had made a quick move to his waistband; and that Vang did in fact have a gun in his pants when Lo shot him.

> imminent death or great bodily harm to himself, the defendant is guilty of attempted first degree intentional homicide.

(Emphasis added.)

¶ 70. The new rule announced in *Head* does not satisfy either of the *Teague* tests for retroactivity in a collateral proceeding. The first test does not apply because Lo's conduct was not decriminalized. The State's proof on a claim of unnecessary defense force was modified. No reasonable argument can be made that the old burden—an objective threshold of reasonableness—was or is beyond the power of the criminal lawmaking authority to proscribe.

¶ 71. The second test does not apply because substituting the words "*actually* believe that he was preventing or terminating a lawful interference with his person," for "*reasonably* believe that he was preventing or terminating an unlawful interference with his person" is not a watershed rule of criminal procedure, implicating fundamental fairness and the concept of ordered liberty.

¶ 72. The argument is made that the *Head* decision created a change in substantive law. In *Bousley v. United States,* 523 U.S. 614, 620 (1998), the Supreme Court drew a distinction between a new procedural rule and a new rule of substance, reasoning that

> decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct " 'beyond the power of the criminal law-making authority to proscribe,' " . . . necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal."

*Id.* at 620 (quoting *Teague,* 489 U.S. at 311 (quoting

33

*Mackey,* 401 U.S. at 692) (Harlan, J., concurring in part and dissenting in part), and *Davis v. United States,* 417 U.S. 333, 346 (1974), respectively)). The Court concluded that changes in substance are not governed by the *Teague* decision. *Id.* at 621.

¶ 73. The *Head* case redefined the burden on the State to disprove mitigating circumstances in a prosecution for first-degree intentional homicide. The State always had the burden of proof on the elements of unnecessary defensive force. It always had to prove these elements beyond a reasonable doubt. The elements of the crime remain the same. Hence, the only change resulting from *Head,* as it affects this case, is a change in the jury instructions as to how the State disproves the presence of mitigating circumstance. We see this as different from proving an additional element.

¶ 74. In any event, the Supreme Court observed in *Wainwright v. Stone,* 414 U.S. 21 (1973), that a state is not constitutionally compelled to make retroactive its new construction of a statute. *Id.* at 24; *see also United States v. Johnson,* 457 U.S. 537, 542 (1982). To the extent that a state chooses to depart from *Teague* principles in a collateral proceeding, it ought to have a clear understanding of the impact of its decision on finality.[14]

---

[14] This court has adopted the rule from *Griffith v. Kentucky,* 479 U.S. 314 (1987), for retroactivity of a new rule of criminal procedure. *State v. Koch,* 175 Wis. 2d 684, 499 N.W.2d 152 (1993). That rule provides: "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 694. The *Griffith* text distinguishes cases that are pending on direct review and are not yet final

¶ 75. In *Teague,* Justice O'Connor explained that "considerations of finality" are significant and compelling in the criminal context. *Teague,* 489 U.S. at 309. "Application of constitutional rules not in existence at the time a conviction becomes final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Id.* "The past cannot always be erased by a new judicial declaration." *Id.* at 308 (quoting *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 374 (1940)). These policy considerations are the foundation for § 974.06.

¶ 76. Writing in *Mackey v. United States,* 401 U.S. 667, Justice Harlan wrote:

> Habeas corpus always has been a collateral remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.

*Id.* at 682–83 (Harlan, J. concurring).

¶ 77. Two interests that often weigh in favor of non-retroactivity are reliance on prior law and the effect of retroactivity on the administration of justice. Those interests clearly apply here.

---

from cases on collateral review. This explains why there is a more stringent test for the retroactivity of new criminal "rules" in collateral proceedings.

¶ 78. First, there is no value to the system of criminal justice to apply a new rule retroactively to settled cases against those who faithfully followed the rules in place at the time of a person's criminal conviction. To illustrate, there is no deterrent value and no educational value in reversing a conviction entered by Judge Gonzalez, who relied on and followed to the letter the jury instruction dictated by this court's decision in *Camacho*. Consequently, even to consider retroactivity, the value to criminal defendants from the retroactive application of a new rule ought to substantially outweigh the value of upholding settled judgments.

¶ 79. Second, the retrial of Lo and others in his position would impose a heavy burden on the entire system of criminal justice. According to the Wisconsin Department of Corrections, there were 1333 persons convicted of first-degree intentional homicide incarcerated in Wisconsin institutions on December 31, 2002.[15] Every defendant who received or requested an instruction on imperfect self-defense after *Camacho* but before *Head* could argue that his or her conviction should be reconsidered and that he or she should be given a new trial.

¶ 80. Third, persons convicted of first-degree intentional homicide are sentenced to life in prison. The State might be unable to retry many first-degree intentional homicide cases because of the passage of time and the death or unavailability of witnesses.

¶ 81. Fourth, the fact that a defendant did not receive the revised imperfect self-defense instruction at trial does not mean that the State could not or did not

---

[15] Wisconsin Department of Corrections report on "Frequency of Each Offense by Statute and Offenses Description 12/31/2002 Incarcerated Adult Population," (CIPIS) Monthly Report File (month ending 12/31/2002).

actually meet its burden of proof at trial. In Lo's case, for example, the State was entitled in 1996 to overcome his affirmative defense if it proved beyond a reasonable doubt that Lo did not reasonably believe that he was preventing or terminating an unlawful interference with his person, *or* Lo "did not actually believe the force used was necessary to prevent imminent death or great bodily harm to himself." The latter element has not changed. Lo's jury might well have noted that Koua Vang was shot in the *back* of his right arm, when he was 40 to 50 feet away from Lo.

¶ 82. Errors in jury instructions often give rise to new rules. But corrections in jury instructions seldom lead to retroactivity *in collateral proceedings. See Gilmore v. Taylor,* 508 U.S. 333 (1993) (unconstitutionality of pattern jury instruction); *Engle v. Isaac,* 456 U.S. 107, 119–21 (1982) (burden of proof for self defense).

¶ 83. In Lo's case the jury was not precluded from considering imperfect self-defense. It was given two options on self-defense. In addition, the jury was instructed that a person who provokes an attack is not allowed to use or threaten force in self-defense against the attack. If the person provokes an attack that causes him to reasonably believe that he is in imminent danger of death or great bodily harm then he may respond with self-defense. However, this person cannot threaten or use force likely to cause death or great bodily harm unless he reasonably believe he has exhausted every other reasonable means to escape or avoid death or great bodily harm.

¶ 84. The court's instruction was correct at the time it was given and it would be only slightly different today. We conclude that the instructional error recog-

37

nized in *Head* need not be applied retroactively to Anou Lo. Such a result would disregard the State's reliance on prior law and have a deleterious effect on the administration of justice. We agree with the sentiments of the late Justice Powell, who wrote in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973),

> No effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen.

*Id.* at 262 (Powell, J., concurring).

## V

¶ 85. For the reasons set forth, we affirm this court's ruling in *Escalona* and we hold that *Head* is not to be applied retroactively to cases on collateral review. Therefore, we affirm Anou Lo's conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 86. ANN WALSH BRADLEY, J. *(concurring in part, dissenting in part).* I agree with the majority opinion that *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), correctly interpreted Wis. Stat. § 974.06(4) and remains good law. I therefore join Parts I and II of the majority opinion.

¶ 87. However, I part ways with the majority opinion with respect to whether *State v. Head*, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, should be applied

retroactively on collateral review. Instead, I agree with the conclusion in Part II of Chief Justice Abrahamson's dissent that "*Head* represents a new interpretation of substantive law that, under *Howard,* enjoys the presumption of retroactive application to cases on direct review and cases on collateral review." Chief Justice Abrahamson's dissent, ¶ 119. I therefore join Part II of the Chief Justice's dissent.

¶ 88. Accordingly, I respectfully concur in part and dissent in part.

¶ 89. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I cannot join the majority opinion. It does not address the difficult issues raised by the parties in this case. The majority opinion does not address the procedural complications raised by our interpretation of Wis. Stat. § 974.06(4) in *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994) (hereinafter *Escalona),* despite the court order identifying that issue as the primary reason for accepting review in this case. Moreover, I disagree with the majority opinion that *Teague v. Lane,* 489 U.S. 288 (1989), requires that our decision in *State v. Head,* 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, not be applied retroactively to the case before us.

I

¶ 90. This court's order accepting review identifies the primary issue for review: "[R]evisit the *Escalona-Naranjo* holding to consider whether . . . a meaningful bar to 'successive motions and appeals'

continues to exist under Wis. Stat. § 974.06(4)."[1] The court's order makes clear that the parties are to address the continued vitality of *Escalona* in light of Judge Deininger's concurring opinion in the present case explaining that defendants are able to circumvent *Escalona.*

¶ 91. The majority opinion's mischaracterization of this case as an inappropriate vehicle in which to examine the issue raised by Judge Deininger is thus nothing more than a decision not to tackle the issue for which we accepted review. When it fails to address the problems identified by Judge Deininger, the majority opinion is not, as it may superficially seem, judiciously refraining from interfering with matters best left to other branches of government or to cases brought by other parties. Rather, the court is shirking its responsibility to face up to the unintended consequences of *Escalona.* We created the difficulty identified by Judge

---

[1] *State v. Lo,* No. 01–0843, unpublished slip op. ¶ 58 (Wis. Ct. App. Dec. 28, 2001) (Deininger, J., concurring). *See also* majority op., ¶ 50.

This court's order accepting review reads as follows:

> [The parties' briefs] may also, to the extent necessary, address the majority's conclusions that: (1) the defendant-appellant-petitioner was barred from raising issues in the postconviction motion; (2) he failed to allege sufficient facts in his postconviction motion to raise a question of fact; and (3) the record conclusively demonstrated that the defendant-appellant-petitioner was not entitled to relief. *The parties are cautioned, however, that the court's primary reason for accepting review in this case is to consider the points raised in the concurring opinion [of Judge Deininger] . . . .*

*State v. Lo,* No. 01–0843, unpublished order (Wis. S. Ct. April 29, 2002) (emphasis added).

Deininger by our *Escalona* interpretation of Wis. Stat. § 974.06. We ought to repair it.

¶ 92. To achieve finality in litigation, *Escalona* held that a defendant may not bring claims under Wis. Stat. § 974.06(4) if the defendant could have raised the claims in his or her previously filed § 974.02 motion or on direct appeal unless the defendant presents "sufficient reason" for having failed to do so.

¶ 93. The bulk of the majority opinion (Part II) is devoted to whether *Escalona* is correct. The majority opinion rehashes at length (48 paragraphs) the same territory mined in previous cases—the language, legislative history, and purpose of Wis. Stat. § 974.06. It also briefs this court's numerous cases that laboriously twisted, turned, tuned, revised, and reversed its various interpretations of § 974.06(4), the language of which remained essentially the same. The majority opinion ultimately concludes that *Escalona* correctly states the law.[2]

¶ 94. Noticeably absent from the majority opinion's affirmation of *Escalona's* interpretation of Wis. Stat. § 974.06(4) is any consideration of the complications resulting from *Escalona* posited by Judge Deininger (Part III of the majority opinion). In other words, the majority opinion does not include in its analysis of the meaning of § 974.06(4) any reference to Judge Deininger's assertion that *Escalona* is not serving its purpose and that defendants have found a way around *Escalona*.

¶ 95. The majority opinion cannot, with a straight face, ignore the problems resulting from *Escalona* when it interprets Wis. Stat. § 974.06(4). Such an approach to statutory interpretation contravenes the basic rule of

---

[2] Majority op., ¶ 15.

statutory construction that a court ought to assess the results a particular interpretation of a statute has on courts, litigants, and public policy when interpreting a statute.[3] It is presumed that the legislature would not enact a statute that leads to an absurd or unreasonable result.[4]

¶ 96.   The goal of finality in litigation is at the heart of the *Escalona* decision interpreting § 974.06(4) "to require criminal defendants to consolidate all their postconviction claims into *one* motion or appeal."[5] The majority opinion here reaffirms *Escalona,* in large part, because it furthers the legislature's goal of finality in the criminal appeals process.[6] Thus, the point raised by Judge Deininger strikes at the heart of this court's interpretation of Wis. Stat. § 974.06(4). The precise issue raised by this case is whether the *Escalona* interpretation of Wis. Stat. § 974.06(4) remains correct given the fact that the *Escalona* decision does not promote finality by compelling a prisoner to raise all issues available to him in one procedure.[7]

---

[3] *See, e.g., State v. Yellow Freight Sys., Inc.,* 101 Wis. 2d 142, 153, 303 N.W.2d 834 (1981) ("[T[his court has often held that statutes should not be construed or interpreted to achieve absurd or unreasonable results.").

[4] *See State v. Jennings,* 2003 WI 10, ¶ 23, 259 Wis. 2d 523, 657 N.W.2d 393 ("The legislature could not have intended the absurd result of requiring the issuance of a warrant for statute of limitations purposes under Wis. Stat. s. 939.74(1) for an individual who is already in custody.").

[5] *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 178, 517 N.W.2d 157 (1994).

[6] Majority op., ¶ 46.

[7] Majority op., ¶ 18 (citing Comment to Wis. Stat. Ann. § 974.06 (West Supp. 1998)).

¶ 97.  Judge Deininger writes that despite *Esca-lona,* defendants are still able to obtain review of a claimed error not previously raised in an appeal or § 974.02 motion. Defendants circumvent *Escalona* by asserting that the "sufficient reason" the issue was not raised previously is that appellate counsel was ineffective for failing to raise the issue on direct appeal or under Wis. Stat. § 974.02. In order to determine whether the ineffective assistance of appellate counsel claim presents a "sufficient reason" for the defendant to be heard, the court of appeals, according to Judge Deininger, must often consider the merits of the underlying claim and assess whether counsel was ineffective for not raising it, thus granting the defendant what Wis. Stat. § 974.06 as interpreted by *Escalona* ostensibly denies: "the consideration of the merits of the defendant's newly asserted claim, for which sufficient reason has not been shown for an earlier failure to raise it."[8]

¶ 98.  Judge Deininger further asserts that the interpretation in *Escalona* creates an even more complex and difficult procedural morass when the claim is that appellate counsel is ineffective for not raising a claim of ineffective assistance of trial counsel. Such a claim burdens courts and the State without bringing about the desired result of finality (and without preventing a defendant from having a court consider the merits of his or her claim that *Escalona* apparently barred). Judge Deininger sets forth the multi-layer, convoluted question the circuit court or court of appeals must ponder as follows:

> Is there merit to the now raised issue, such that trial counsel was deficient for not making a request or

---

[8] *Lo,* unpublished slip op., ¶ 56 (Deininger, J., concurring).

objection regarding it, thereby prejudicing the defendant, and thereby also rendering postconviction and/or appellate counsel's performance deficient and prejudicial for failing to assert trial counsel's ineffectiveness, such that the defendant has presented a sufficient reason for the failure to raise the issue in earlier postconviction or appellate proceedings, which would permit him to now bring the issue before the court for a consideration of its merits?[9]

¶ 99. Judge Deininger graphically describes the cumbersome task before the circuit court and court of appeals: "[T]he effort to peel through the layers of this onion-like inquiry often results in analyses that are needlessly complex, fraught with the potential for gaps or errors along the way, and, all in all, a frustrating undertaking for courts and respondent's counsel alike."[10] Finally, Judge Deininger laments that circuit courts and courts of appeal have to answer this question without a *Machner*[11] hearing to determine why trial counsel failed to raise the issue.[12]

---

[9] *Id.,* ¶ 57 (Deininger, J., concurring).

[10] *Id.,* ¶ 58 (Deininger, J., concurring).

[11] *See State v. Machner,* 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

[12] The complicating effects of *Escalona* are not limited to review under Wis. Stat. § 974.06. Defense counsel asserts that because all issues must be raised on direct appeal or be deemed waived, cautious post-conviction or appellate counsel must include and litigate ineffective assistance of counsel on virtually any argued post-conviction motion or appeal.

The United States Supreme Court's decision in *Massaro v. United States,* ___ U.S. ___, 123 S. Ct. 1690 (2003), provides support for defense counsel's position. In *Massaro* the United States Supreme Court held that, despite the general rule that claims not raised on direct appeal may not be raised on

44

¶ 100. The *Escalona* issue this case poses is whether the court should stick with *Escalona* and continue to require this "onion-like" analysis, which increases the workloads of counsel and the courts, or should reinterpret Wis. Stat. § 974.06. The majority opinion ducks the issue.

¶ 101. Everyone who submitted a brief in this case—the State, the defendant, the State Public Defender and the University of Wisconsin Law School Frank J. Remington Center—agrees that *Escalona* has posed a significant problem. They differ only on the solution.

¶ 102. To resolve the dilemma posed by *Escalona,* defense counsel suggests we overrule *Escalona* as contravening the language and legislative history and the underlying policy of finality.

¶ 103. The State says keep *Escalona.* The State asserts that the court of appeals is wrong to assume that a defendant can escape the *Escalona* bar by a claim of ineffective assistance of appellate counsel. According

---

collateral review unless the petitioner shows cause and prejudice, a petitioner could raise an ineffective assistance of counsel claim in a collateral proceeding under 28 U.S.C. § 2255 (upon which our law is based), even though the petitioner could have raised, but did not raise, the claim on direct appeal. *Massaro,* 123 S. Ct. at 1694. The *Massaro* Court recognized that forcing an offender to bring an ineffective assistance of counsel claim on direct review "creates inefficiencies for courts and counsel." *Massaro,* 123 S. Ct. at 1695. According to the United States Supreme Court, appellate counsel is in a difficult position vis-à-vis trial counsel, needing trial counsel's help to get familiar with a trial record on short notice while simultaneously combing his or her comments for signs of incompetence.

Furthermore, apparently most Wis. Stat. § 974.06 motions are filed pro se by inmates without legal training or substantial legal resources.

to the State, appellate counsel's ineffective representation does not constitute a "sufficient reason" to allow the defendant to raise the issue on a Wis. Stat. § 974.06 motion. The State concludes that *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992), requires a defendant to litigate an ineffective assistance of appellate counsel claim through a habeas petition to the appellate court, and that the court of appeals erred in *State ex rel. Rothering v. McCaughtry,* 205 Wis. 2d 675, 556 N.W.2d 136 (Ct. App. 1996), adopting a different procedure for claims of ineffective assistance of post-conviction counsel. According to the State, a defendant who challenges appellate counsel's failure to raise a particular issue must sufficiently plead and prove deficient performance and prejudice through a *Knight* petition, not through a § 974.06 proceeding.[13]

¶ 104. The Frank J. Remington Center of the University of Wisconsin Law School supports the defendant's position on *Escalona* but focuses on and is critical of the State's suggested new procedure. The Center's brief illustrates how a hypothetical defendant traverses the procedural morass created by *Escalona, Knight,* and *Rothering,* as well as the State's proposal.

¶ 105. The Office of the State Public Defender supports the defendant's position on *Escalona.* It expands Judge Deininger's point that *Escalona* imposes significant costs on the courts and litigants. It also asserts that the State's proposal shifts the pressure into habeas litigation and transfers the forum for hearing the defendant's claims from the circuit courts to the appellate courts. The Public Defender explains the

---

[13] The State's Brief presents a very detailed proposal, even suggesting standards the courts should apply to a claim of ineffective assistance of counsel. State's Br. at 14–23.

effect of the State's proposal and post-conviction remedies on the right to counsel, on the operation of its office, and on state and county funding.

¶ 106. Putting aside textual and legislative history analysis about which courts and litigants have disagreed, I conclude that the policy of finality driving *Escalona* is still a good one but that *Escalona* has not accomplished what the court intended it to do. The fact remains that serial litigation is allowed under *Escalona*. Defendants are getting review of their claims of trial court error despite *Escalona* through the circuitous and cumbersome route of claiming "ineffective assistance of appellate counsel."

¶ 107. I would not adopt the State's suggested procedure, because I think it will exacerbate the procedural complications already created by *Escalona*. I would just overturn *Escalona*.[14] I noted in my *Escalona* dissent that this court's original interpretation of Wis. Stat. § 974.06 in *Bergenthal v. State,* 72 Wis. 2d 740, 242 N.W.2d 199 (1976), allowing all prisoners one § 974.06 motion, had been applied for 18 years and no showing was made that it had "become detrimental to the administration of the justice system or to the coherence and consistency in the law."[15]

¶ 108. In light of the practical difficulties being experienced with *Escalona* and the lack of difficulties for 18 years with *Bergenthal,* I would overturn *Escalona* and return to *Bergenthal.* As Justice Prosser wrote

---

[14] In the interest of full disclosure, I should state that I dissented in *Escalona,* observing that the *Escalona* approach merely shifts a court's attention from the merits of the constitutional claim to "arcane procedural issues." *Escalona,* 185 Wis. 2d at 196 (Abrahamson, J., dissenting).

[15] *Escalona,* 185 Wis. 2d at 197 (Abrahamson, J., dissenting).

for the court in *Johnson Controls, Inc. v. Employers Insurance of Wausau*, 2003 WI 108, ¶ 106, 264 Wis. 2d 60, 665 N.W.2d 257, stare decisis should not deter a court from correcting a decision when events subsequent to the decision demonstrate that the court has failed to provide "suitable direction and consistency."

¶ 109. The majority opinion expends seven paragraphs (¶¶ 50–57) complimenting Judge Deininger on his "insightful" identification of the "complications resulting from the *Escalona* decision," but then does nothing about these complications. The circuit court and court of appeals are left to shoulder the burden *Escalona* imposes without any relief in sight, as the majority opinion never explains by whom or when these "complications" will be eliminated or alleviated. It suggests at one point we should defer to the legislature: "Some of the answers to these issues may be more a matter of wise policymaking than statutory interpretation."[16] At another point it suggests that this court should craft remedies via its rule-making authority in collaboration with "the State and the defense bar"[17] because of concerns about fairness to defendants and the State and shifts in workload. Finally, it opines that more information is needed from other jurisdictions (readily available to the court through the library, the Internet, and other sources) before "we attempt to fashion a solution" that promotes reasonable finality.[18]

¶ 110. This court has a responsibility to resolve the issues raised by the cases we accept for review. The majority opinion neglects this responsibility without an explanation, leaving circuit courts, the court of appeals,

---

[16] Majority op., ¶ 56.

[17] *Id.*, ¶ 4.

[18] *Id.*, ¶ 56.

the State, and many prisoners stuck in a procedural morass that benefits none of them. This is unacceptable.

## II

¶ 111. The second issue on which the majority opinion and I disagree is whether *State v. Head*, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, applies retroactively to cases on collateral review. The majority opinion looks to federal cases to assist in deciding the issue and makes the federal cases sound consistent, easy to understand, and easy to apply. I do not think retroactivity is an easy area of the law. I agree with a commentator who explained the confusing state of U.S. Supreme Court cases relating to retroactivity as follows: "Over the course of the past thirty-six years, the [U.S. Supreme] Court has grappled with the issue of retroactivity and has crafted a theoretically incoherent doctrine that has proven difficult to apply."[19]

¶ 112. The majority opinion concludes that *Head* does not apply retroactively to cases on collateral review. It reaches this conclusion by applying the federal doctrine of nonretroactivity for "new constitutional rules of criminal procedure" announced in *Teague v. Lane*, 489 U.S. 288 (1989), and then by asserting that the "rule announced in *Head* does not satisfy either of the *Teague* tests for retroactivity in a collateral proceeding."[20]

---

[19] Christopher S. Strauss, *Collateral Damage: How the Supreme Court's Retroactivity Doctrine Affects Federal Drug Prisoners' Apprendi Claims on Collateral Review*, 81 N.C. L. Rev. 1220, 1222 (2003).

[20] Majority op., ¶ 70. The exceptions to the rule of nonretroactivity for cases on collateral review are: (1) if the new rule

¶ 113. The problem with the majority opinion's conclusion is that *Teague* does not apply to the present case. We so held in *State v. Howard,* 211 Wis. 2d 269, 284, 564 N.W.2d 753 (1997). The defendant in *Howard* was convicted after the jury was instructed on the charge of possessing a dangerous weapon in accord with the law at the time. This court subsequently declared in another case that the instruction erroneously stated an element of the offense.[21] On collateral review, the *Howard* court recognized that its new interpretation of the elements of the crime worked a substantive change in the law and accordingly *Teague* did not apply. The *Howard* court concluded that there was a distinction between new procedural rules and new substantive interpretations in the retroactivity context and held that "the *Teague* retroactivity analysis is limited to procedural rules" and "the doctrine of nonretroactivity found in *Teague* does not apply to substantive interpretations."[22] It therefore applied the new interpretation retroactively on collateral review to cases finalized before the change of the substantive law.[23]

¶ 114. *Howard* is consistent with United States Supreme Court precedent. The United States Supreme Court has held that *Teague* applies only to procedural rules and is inapplicable in situations in which a court decides the meaning of a criminal statute enacted by

---

places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe; and (2) if the new rule requires the observance of those procedures that are implicit in the concept of ordered liberty. *Teague v. Lane,* 489 U.S. 288, 307 (1989).

[21] *See State v. Peete,* 185 Wis. 2d 4, 517 N.W.2d 149 (1994).

[22] *State v. Howard,* 211 Wis. 2d 269, 284, 564 N.W.2d 753 (1997).

[23] *Howard,* 211 Wis. 2d at 272.

Congress.[24] Changes in substantive law, in contrast to changes in procedural law, are presumed to apply retroactively to all cases (both on direct and on collateral review) because the holding that a substantive criminal statute does not reach certain conduct carries a significant risk that a defendant stands convicted of an act that the law does not make criminal.[25]

¶ 115.   The majority opinion finesses this crucial distinction when it concludes that *Head* is a new rule that does not apply retroactively to cases already final because it does not fit the exceptions to *Teague*.[26] If one believes, as I think one must, that *Head* changed a substantive criminal law, then *Teague* does not apply and the presumption is that the "new" law applies retroactively to cases on collateral review.[27]

¶ 116.   The heart of the issue presented by this case is whether this court's decision in *Head* announced a new rule of criminal procedure or one of substantive

[24] *See Bousley v. United States,* 523 U.S. 614, 620 (1998) ("[B]ecause *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute.").

[25] *See Bousley v. United States,* 523 U.S. 614, 620 (1998); *United States v. Mandanici,* 205 F.3d 519, 525 (2d Cir. 2000) ("While a new rule of constitutional criminal procedure generally does not apply retroactively on collateral review, a new rule of substantive criminal law is presumptively retroactive because a defendant may have been punished for conduct that simply is not illegal.") (internal quotations omitted).

[26] Majority op., ¶ 70.

[27] The majority opinion's warning to states that departing from the *Teague* principles has a significant impact on the finality of criminal convictions is inapposite. Majority op., ¶ 75. *Bousley* makes clear that applying a new substantive interpretation retroactively to cases on collateral review is not a departure from *Teague*.

law.[28] The majority opinion closes its eyes to this issue, blindly framing the threshold issue as whether the decision in *Head* could "fairly be described as a 'new rule' "[29] without focusing on whether the decision in *Head* should fairly be described as a new constitutional rule for criminal procedure or a new interpretation of substantive law. The majority opinion's neglect of this distinction between new procedural and new substantive rules in the retroactivity context is particularly puzzling given the fact that both parties recognized the distinction and briefed their arguments accordingly.

¶ 117. The defendant argues that *Head* provided a new substantive interpretation of imperfect self-defense, not a new constitutional rule for criminal procedure, and thus must be applied retroactively to cases on collateral review under *Howard*. According to the defendant, this case is on all fours with *Howard*—he was convicted by a jury instructed in accordance with the law at the time, the law was subsequently reinterpreted, and he is entitled to a new trial under the correct interpretation of the law.

¶ 118. The State, for its part, argues that *Howard* (and *Bousley*) do not control this case for two reasons: (1) in *Howard* this court interpreted a statute for the first time, whereas in *Head* this court merely modified an existing interpretation; and (2) in *Howard* the new interpretation involved an essential element of a penalty enhancer, whereas in *Head* the new interpretation involved an affirmative defense. According to the State,

---

[28] *See, e.g., Monsanto v. United States*, 143 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) ("In deciding whether the *Richardson* decision applies retroactively, the Court must determine whether the Supreme Court announced in *Richardson* a new rule of criminal procedure or one of substantive law.").

[29] Majority op., ¶ 62.

this latter distinction means that despite the change in the law, the State proved all of the elements of the crime beyond a reasonable doubt and no previously criminal behavior has been decriminalized.

¶ 119. I agree with the defendant. I conclude that *Head* represents a new interpretation of substantive law that, under *Howard,* enjoys the presumption of retroactive application to cases on direct review and cases on collateral review.

¶ 120. *Head* defined anew what conduct may be criminalized as first-degree intentional homicide. It rejected the prevailing view that imperfect self-defense required an objectively reasonable belief of imminent threat and held that the legislature intended for imperfect self-defense to require a subjective belief of imminent threat.

¶ 121. Prior to *Head,* a defendant who asserted imperfect self-defense under Wis. Stat. § 940.01(2)(b) as an affirmative defense to first degree intentional homicide was guilty if the jury found the defendant's belief that he or she was preventing or terminating an unlawful interference with his person unreasonable.[30] This objective test was based on this court's interpretation of the statute in *State v. Camacho,* 176 Wis. 2d 860, 501 N.W.2d 380 (1993). In *Head,* the same law, § 940.01(2)(b), was interpreted to encompass a subjective test of whether the defendant "actually" believed he was preventing or terminating an unlawful interference with his person.[31] Thus, prior to *Head,* a person was guilty of first-degree intentional homicide even if the jury found that he actually believed he was acting in

---

[30] *State v. Head,* 2002 WI 99, ¶ 79, 255 Wis. 2d 194, 648 N.W.2d 413.

[31] *Head,* 255 Wis. 2d 194, ¶ 70.

self-defense, but after *Head,* that same person is no longer guilty of first-degree intentional homicide.

¶ 122.  The majority opinion dramatically understates the import of this shift from an objective to a subjective standard, describing it as a "fairly subtle difference."[32] Whether a person is to be measured on an objective or subjective standard is a major issue running throughout many different areas of law,[33] and a court's decision to impose criminal or civil liability based on one or the other standard is often outcome determinative. The shift required a reversal of the defendant's conviction in *Head,* and as the majority opinion admits:

> If [*Head*] applied retroactively, [the defendant's] conviction for attempted first-degree homicide would probably be reversed on the basis that the jury instruction for unnecessary defensive force (imperfect self-defense) did not require the State to prove beyond a reasonable doubt that [the defendant] did not actually believe that he was in imminent danger of death or great bodily harm.[34]

¶ 123.  Contrary to the State's assertion, it makes no difference that *Head* modified an existing interpretation of the imperfect self-defense statute as opposed to interpreting that statute for the first time. Either way, the defendant was convicted under an incorrect interpretation of the law.[35] Moreover, contrary to the

---

[32] Majority op., ¶ 68.

[33] *See, e.g., Hofflander v. St. Catherine's Hosp., Inc.,* 2003 WI 77, 262 Wis. 2d 539, 664 N.W.2d 545.

[34] Majority op., ¶ 58.

[35] The law presumes that jurors faithfully follow the jury instructions. The instructions in the present case did not accurately state the law and possibly misled the jurors about the

majority opinion, it makes no difference that *Head* changed the interpretation of an element of an affirmative defense as opposed to an element of the crime itself. The State bears the burden of disproving the affirmative defense beyond a reasonable doubt as it does the elements of the offense and it is irrelevant that *Head* did not decriminalize any conduct. There is no requirement that a change in the law decriminalize conduct in order to be substantive.[36]

¶ 124. The failure to apply the new interpretation of Wis. Stat. § 940.01(2)(b) announced in *Head* retroactively to all cases is also untenable because it implies that the statute means one thing prior to this court's interpretation and something entirely different after-

applicability of the defendant's claim of imperfect self-defense. The erroneous instruction constitutes a profound violation of a defendant's constitutional rights. The incorrect jury instructions mean that the defendant was not tried under the substantive criminal laws of the State and was thus deprived of a fair trial under the laws of this state. The right to a correct affirmative defense instruction when there is evidence to support an affirmative defense is especially critical when the defendant takes the stand to prove his affirmative defense. The defendant merely asks that he be convicted of attempted first-degree intentional homicide only if he is guilty of attempted first-degree intentional homicide.

[36] *Monsanto,* 143 F. Supp. 2d at 278 ("There is nothing in *Davis,* or in any other precedent that this Court is aware of, to suggest that a new decision is substantive only if it results in a conviction for an act that the law does not make criminal."); *see also Santana-Madera v. United States,* 260 F.3d 133, 139 (2d Cir. 2001) (concluding that a case interpreting a federal criminal statute so as to change the elements of an offense altered the meaning of the substantive criminal law and was therefore retroactively applicable to cases on collateral review).

wards.[37] Moreover, it suggests that this court can determine and has determined what conduct is criminal, or at least the degree to which certain conduct is criminal, in all pre-*Head* cases. This is inappropriate. The legislature "determines what constitutes a crime in Wisconsin and establishes maximum penalties for each class of crime."[38]

¶ 125. The majority opinion here fails to apply *Head* retroactively because it fears that our criminal justice system cannot handle the potential flood of cases in which someone will seek a new trial if *Head* is applied retroactively. The majority opinion admits as much when it begins its analysis, "[I]f we were to retroactively apply the decision in *Head* to this case, we would arguably open to collateral attack 10 years of homicide convictions that involved the standard jury instruction

---

[37] *United States v. Dashney*, 52 F.3d 298, 299 (10th Cir. 1995); *see also State v. Benzel*, 220 Wis. 2d 588, 592, 583 N.W.2d 434 (Ct. App. 1998) (retroactive application of a decision striking down an unconstitutional criminal law is required "because failure to do so leads to the untenable result that a person stands convicted for conduct which has been held constitutionally immune from punishment.").

The majority opinion's conclusion that "the court's instruction [on imperfect self-defense in the present case] was correct at the time it was given and it would be only slightly different today," majority op., ¶ 83, flatly disregards the language in *Head* concluding that "we are mindful that our interpretation [of Wis. Stat. § 940.01(2)(b)] is at odds with the court's determination in *Camacho*." *Head*, 255 Wis. 2d 194, ¶ 92.

[38] *In re Judicial Admin. Felony Sentencing Guidelines*, 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984).

on imperfect self-defense,"[39] and concludes its analysis by tipping its hat to "considerations of finality."[40]

¶ 126. The majority opinion's concerns are appropriate. Many prisoners may request a new trial if *Head* is applied retroactively. These concerns, however, are no substitute for the burden this court has to insure that a person is not condemned for a crime that he or she did not commit. "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[41]

¶ 127. The defendant here is likely guilty of a crime. He shot and wounded another person. But he is likely not guilty of the crime for which he is now spending 29 years of his life in prison. There appears to be substantial evidence supporting the defendant's testimony that he actually believed the victim was reaching for a gun before he pulled his own gun, and thus, that a jury could have reasonably concluded that he acted in "imperfect" self-defense under the proper interpretation of § 940.01(2m)(b). The defendant deserves a trial in which the State proves beyond a reasonable doubt every fact necessary to constitute the crime with which he is charged.

### III

¶ 128. The majority opinion concludes that it does not have the information or arguments necessary to address the complications stemming from *Escalona*

---

[39] Majority op., ¶ 61.

[40] Majority op., ¶ 75.

[41] *In re Winship,* 397 U.S. 358, 364 (1970).

identified by Judge Deininger, despite a court order squarely requesting that the parties address these complications and four briefs responding to that request. It thus defers judgment on the matter.

¶ 129. The majority opinion then concludes that it has the information and arguments necessary to settle the complicated law of retroactivity without referencing the arguments presented and briefed by the parties or acknowledging the legal issues actually raised and asserts its judgment on the matter.

¶ 130. I agree with the State that Wisconsin is free to establish and apply its own retroactivity analysis.[42] This court has endorsed the *Teague* approach generally,[43] even though it has recognized that *Teague* is not very well crafted or understood. The court has modified the Teague approach when it has thought adaptation necessary on policy grounds.[44]

¶ 131. Figuring out retroactivity is a difficult matter, however, and should not be done without help from litigants and without examining what other states are doing and what does and does not work. The majority opinion in this case overturns *Howard* sub silencio and departs from United States Supreme Court precedent without batting an eye and without full information such as the effect of retroactivity on finalized cases.

---

[42] *See Wainwright v. Stone,* 414 U.S. 21, 23–24 (1973).

[43] *See, e.g., State v. Howard,* 211 Wis. 2d 269, 282, 564 N.W.2d 753 (1997); *State v. Koch,* 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993), *cert. denied,* 510 U.S. 880 (1993); *State v. Horton,* 195 Wis. 2d 280, 287, 536 N.W.2d 155 (Ct. App. 1995).

[44] *See, e.g., State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 257, 548 N.W.2d 45 (1996) (applying a variation of *Teague*).

¶ 132. Why the majority is comfortable with such an approach when addressing retroactivity but not addressing *Escalona* completely escapes me.

¶ 133. For the foregoing reasons, I dissent.

¶ 134. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join Part II of this dissent.